## THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. THE CITY OF ATCHISON et al.

1. SECTARIAN COLLEGES — *Void Tax.* There is no power in the officers of a city, to subscribe public money in aid of private, sectarian colleges, and a tax levied on property within the city for that purpose is void.

2. ILLEGAL TAX — *Involuntary Payment — Recovery.* *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.,* 16 Kas. 587, and *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.,* infra, followed, holding that a portion of the illegal tax was paid by plaintiff under such circumstances as to be an involuntary payment, which may be recovered back.

*Error from Atchison District Court.*

ACTION by the *Atchison, Topeka & Santa Fé Railroad Company* against the *City of Atchison, T. J. Emlen,* as treasurer of Atchison county, and *T. J. Emlen,* to recover certain taxes paid. Judgment for defendants on demurrer to the petition. Plaintiff brings error.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*W. D. Gilbert,* city attorney, for defendant in error the City of Atchison; *W. T. Bland,* county attorney, for defendants in error other than the City of Atchison.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by the railroad company against the city of Atchison, T. J. Emlen, county treasurer of Atchison county, and T. J. Emlen, to recover certain taxes claimed to be illegally paid, amounting to the sum of $264.55, with interest thereon at 7 per cent. from December 20, 1887. In its petition plaintiff alleged, among other things, that in the year 1887 it was the owner of personal property in the city of Atchison and a tax-payer of Atchison county; that in that year the city of Atchison, by its mayor and council, levied a tax of 10¾ mills on the dollar on the personal property of plaintiff assessed in the city to pay one-half of a subscription made by the city in the sum of $50,000 for the benefit of Midland College, and also to pay one-half of a subscription of $50,000 made by the city for the benefit of St. Louis College, and that both of these colleges were and are private and sectarian institutions, and not public schools and colleges; that the levy and tax therefrom, amounting to $271.33, was charged against the personal property of the plaintiff on the tax-roll of the county for the year 1887; and that the defendant treasurer proceeded to collect this illegal tax, the same as other taxes. It is further alleged, that between the 16th and the 20th days of December, 1887, the plaintiff was desirous of paying the full amount of all taxes legally due from it, and notified the county treasurer that the tax of $271.33 for the colleges was illegal and unauthorized, and protested against the payment of the same; but the treasurer declined and refused to receipt in full for the taxes on plaintiff's property unless the plaintiff should pay the illegal tax, less the usual rebate; and the plaintiff thereupon, although protesting, paid to the treasurer the sum of $264.55, in order to avoid the issue of legal process for its collection. And it is further alleged that if it had not so paid the illegal tax, the county treasurer would have issued his warrant to the sheriff of the county for its collection, and the property of the plaintiff would have been levied upon and sold under the forms of

law.   The protest against paying this tax was in writing, and is as follows:

"The Atchison, Topeka & Santa Fé Railroad Company hereby notifies you that the amount legally due by said company as tax on the personal property in your county for the year 1886 does not exceed the sum of $5,799.38, which sum you have refused to receive; and that said company pays the sum of $264.55 demanded by you, protesting against the illegality thereof, and solely to avoid the issue of legal process for its collection.   And said company further notifies you, that it will hold you and your county liable for the excess above the amount legally due; that you are not to disburse or part with such excess, and that said company will sue you and said county for its recovery.

"Dated this 16th day of December, 1887."

Upon the demurrer of the defendants, the district court held that the petition did not allege a cause of action; and the plaintiff standing upon its petition, judgment was given in favor of the defendants.

No argument is required to show the invalidity of the tax. Of course the public is interested in education, and taxes may be authorized and properly levied for the maintenance of public institutions of learning; but in this case the subscription and levy were for private and sectarian institutions.   We are concluded by the statements in the petition as to the character of the colleges proposed to be aided by the city.   The demurrer admits that they are not public schools or colleges, such as can be maintained by money drawn from the public treasury.   While it is argued that the public is benefited by the increase of schools and the spread of learning and knowledge, it is not contended that the colleges in question are under the supervision and control of the public, or that there is or could be any legislative authority to expend the public revenues for their support.   The officers of the city had no power to impose a tax on the property of the citizens of Atchison to aid private, sectarian schools, or to promote private interests and enterprises.

1. Private, sectarian schools; void tax.

(*Loan Association v. Topeka*, 20 Wall. 655.)

The district court appears to have held the tax to be void, but that the payment of the same by the plaintiff was voluntary, and therefore not recoverable. The facts stated in the petition bring the case within the rule announced long ago in *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kas. 596, and which has been followed in *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.*, infra. Under the Wyandotte case, the argument and reasoning of which it is unnecessary to repeat, the first half of the illegal tax which was required to be paid may be recovered back; but the second half was an optional payment, made to secute a rebate, and is not recoverable. The demurrer should have been overruled, and for the error in sustaining the same the judgment will be reversed, and the cause remanded for a new trial.

*2. Illegal tax— involuntary payment— recovery.*

HORTON, C. J., concurring.

VALENTINE, J.: In my opinion, the decision of the court below was and is entirely correct. While I concur with the majority of the members of this court in holding that the tax in dispute is illegal and void, yet I dissent from their opinion holding that such tax was paid by the plaintiff under compulsion and involuntarily. The tax was paid on December 17, 1887; therefore, presumably, it was levied in August, 1887, and was placed on the tax-roll some time between that time and November 1, 1887; and on November 1, 1887, the tax-roll was placed in the hands of the county treasurer for collection; and on December 17, 1887, the plaintiff paid the tax; and during all that time, from August up to December 17, 1887, the plaintiff had ample opportunity to commence an action to test the validity of the tax; but it did not do so. And why did it pay the same at that particular time and without any contest? It is suggested that a penalty might have been added after December 20, if the tax had not been paid prior thereto; but this could not affect the plaintiff's rights. A valid penalty could never be added to a void tax. The penalty would be as void as the tax itself, and no lapse

of time nor anything else could ever make either the void tax or the void penalty valid. The plaintiff could at any time have avoided both. It is also suggested that a warrant for the collection of the tax might have been issued by the treasurer. Now it would be illegal and wrongful for the treasurer at any time to do so; and why must it be supposed that he might have committed such wrongful and illegal act? But suppose he might have done so: still, it must not be supposed that he would have done so until after January 10, 1888; for a county treasurer cannot, under any circumstances nor in any case, issue a legal tax warrant for delinquent taxes until after January 10. (Tax Law, § 92; Gen. Stat. of 1889, ¶ 6941.) Hence the plaintiff was under no possible compulsion to pay the tax when it paid the same, nor could it have been until after January 10, 1888 — more than 24 days thereafter. The rule governing in such cases is stated in the case of *Wabaunsee Co. v. Walker*, 8 Kas. 431, 436, as follows:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed to be voluntary, and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary."

This rule has been quoted approvingly and followed twice by the supreme court of the United States. (*Lamborn v. Co. Commissioners*, 97 U. S. 181, 186, 187; *Railroad Co. v. Commissioners*, 98 id. 541, 543, 544.) In the first case Mr. Justice Bradley delivered the opinion of the court. The case was thoroughly considered and many cases cited, among them the case of *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kas. 587, which was cited and considered, but not followed, except so far as it supported the decision reported in 8 Kas. 431. The case reported in 98 U. S. was on error from the United States circuit court for the district of Nebraska. That case was also thoroughly considered. The opinion therein was de-

livered by Chief Justice Waite, who, in delivering the opinion of the court, after quoting the rule enunciated in the 8th Kansas Report, then used the following language: "This, as we understand it, is a correct statement of the rule of the common law." ( 98 U. S. 543, 544.)    See also *Phillips v. Jefferson Co.*, 5 Kas. 412, 416, *et seq.; Sapp v. Comm'rs of Brown Co.*, 20 id. 243, 245.

Possibly the rule as enunciated in the 8th Kansas Report and also in the 97th and 98th United States Reports is wrong, but I do not think so.    The case reported in the 8th Kansas ( *Wabaunsee Co. v. Walker*) was decided more than 20 years ago, and the rule there enunciated has never since been overruled or questioned or doubted by this court, unless by the merest of implications; but, on the contrary, it has been reiterated and confirmed in other decisions, and especially in the case of *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kas. 587, 597, where the rule enunciated in the 8th Kansas Report is quoted; and a statement is then made in the opinion of the court as follows: "We see no reason to doubt the correctness of the rule as thus stated." ( 16 Kas. 597.)    The rule is also quoted as law in the syllabus of that case. ( 16 Kas. 587.)    Now, after the rule has existed in Kansas for more than 20 years, being announced by the supreme court of Kansas in 1871, ( 8 Kas. 431,) reiterated by the same court in another case in 1876, ( 16 Kas. 587,) and subsequently followed by the court in still other cases, ( 20 Kas. 245; 22 id. 389, 398, 399,) has it not had an existence long enough in Kansas to be considered as settled and established, or must it now be overturned and destroyed?    The rule, however, was really announced in Kansas in 1870. ( *Phillips v. Jefferson Co.*, 5 Kas. 412.)    But suppose that when the plaintiff paid this illegal and void tax, which it was not bound at all to pay, a cause of action accrued in favor of the plaintiff: then against whom did the cause of action accrue?    Was it the county treasurer who received the money, or the county clerk who placed the tax on the tax-roll, or the county of Atchison, or the city of Atchison, or the Midland College, for whose benefit the tax was levied and col-

lected? Or was it some other person or corporation or body, public or private, or all severally and collectively? And if a cause of action accrued in favor of the plaintiff and against somebody, did any statute of limitations commence to run against such cause of action? And if so, then what statute of limitations—a statute giving two years or three years, or some greater period of time within which to commence the action? How long would this cause of action stand as a valid and existing liability impending over one or more or all of the foregoing parties? In closing, I might say that if the plaintiff had tendered to the county treasurer all the valid taxes standing against it, and had kept the tender good, no valid penalty could ever afterward have been added to any one of such taxes, nor could any valid warrant have ever afterward been issued for their collection; and void penalties and void warrants could in any case easily be defeated.

HORTON, C. J.: I concur in the reversal of the judgment of the district court, but on account of the dissent filed I add a few words. It was decided by this court in 1876, about 16 years ago, in the case of *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kas. 587, as stated in the syllabus, that—

"Where all steps for determining the amount of a tax upon personal property have been taken, the tax-roll is complete and in the treasurer's hands, the taxes due, and it is made the duty of the treasurer at a specified date to issue a warrant to the sheriff to collect all unpaid taxes on personal property, and the duty of the sheriff within 60 days thereafter to levy upon and sell sufficient personal property to pay such taxes, penalty, and costs, and no discretion is given to anyone to change the amount of the tax or the time or manner of its collection, a payment to the treasurer of the tax, protesting its illegality, declaring that payment is made solely to avoid the issue of process, and asserting an intention to sue for the sum illegally paid, should be considered an involuntary payment—one made to prevent an immediate seizure of the taxpayer's property, although such payment was made 17 days before the time fixed for the treasurer to issue his warrant."

In support of this part of the syllabus of the case, Mr. Justice Brewer, in the opinion, said :

"But here no warrant has issued.   None could legally issue for 17 days, nor could the company's property be in any manner disturbed before that time — so that there was no danger of instantaneous seizure.   On the other hand, there was no further inquiry to be made by the officer or tribunal.   The amount of the tax was fixed beyond any opportunity for review.   There was no discretion with anyone as to whether a warrant should or should not issue, a levy should or should not be made.   The machinery for adjusting the amount of the tax had completed its work, and was at rest; only the machinery for collecting was in motion, and it moved with the certainty of fate and the rapidity of time to the finality of seizure and sale.   Where the law is imperative, and, giving no discretion, commands the issue of the warrant at a definite time, and the levy under that warrant within a fixed time thereafter, must an individual wait until the last moment, and pay only just as the officer is seizing his property, or may he assume that the officers of the law will obey its precepts, and, when all opportunity for consideration, correction and change has passed, all discretion ended, and the tax-roll is in the treasurer's hands, waiting only the lapse of a few days to ripen into a warrant and seizure, may he not then pay to the treasurer, protesting against the legality, and asserting his intention to contest?   Does he not then pay to prevent an immediate seizure, one that is certainly and presently impending?   Wherein does the state suffer wrong, or what advantage does it lose by holding that to be an involuntary payment? . . .   It seems to us, then, that according to a fair and reasonable interpretation of the rule, the railway company paid this first half of the tax under such circumstances that it should be considered an involuntary payment.   It was to prevent a seizure as certainly impending as the law could make it, and one also presently impending.   It may be remarked that the entire personal tax was levied and assessed as one tax.   The law simply divided the time of payment, requiring one-half to be paid in December, and permitting the other to remain until the June following, so that if more than the one-half was paid in December, there would be some show of reason in holding that it might be corrected when the last half of the same tax was to be paid."

This decision was subsequent to the decision of *Wabaunsee*

*Co. v. Walker*, 8 Kas. 431, rendered by this court in 1871, and if it differs or modifies that decision in any way, the decision in the Wyandotte county case must be considered as the law of this state, as interpreted by its highest legal tribunal, rather than the earlier decision.    The decision in the Wyandotte county case very clearly and properly construes the old case of *Wabaunsee Co. v. Walker*, 8 Kas. 436, and ever since that decision the construction so given it by the court in the declaration of the law as announced in the fifth proposition of the syllabus thereof, has been the rule in this state in such cases, and is very justly the rule now.    Further, this decision has remained unchallenged and unchanged ever since 1876. In this particular case, it appears that the plaintiff " used the Wyandotte case as a guide for its action" and paid its money upon the rule therein stated.    It would be grossly unjust if a party, acting upon the law as interpreted by the supreme court of this state, should pay his money according to the express provisions of a decision, and then be gravely informed by a subsequent decision, after he had so acted, and parted with his money, that the law was exactly contrary to that previously declared by this court.    " I suppose it might be considered as a kind of legal axiom, that courts should not exercise their jurisdiction in any random manner, for this would speedily land everything in 'confusion worse confounded.' " (Wells, Res. Adj. 541.)    The New York court, speaking of the maxim *stare decisis et non quieta movere*, says: "The decisions of this court, while unreversed, always form the absolute law of the cases, and enter, with very decisive effect, into the body of precedents." (*Bates v. Relyea*, 23 Wend. 340.)

" When once a principle has been fully recognized, it should not be changed, except it is found to be unbearably wrong, or else it is changed or abrogated by the legislature, (*Lemp v. Hastings*, 4 G. Greene, 449,) to whom the correction of errors ought usually to be left as to long-established principles acted upon as a rule of property." (*Emerson v. Atwater*, 7 Mich. 23.) "The rule of *stare decisis*, so far as it applies to decisions of our own court, should not be disregarded, but on the fullest

conviction that the law had been settled wrong, and, even then, we should pause and consider how far the reversal would affect transactions entered into and acted upon under the law of the court." (*Sydner v. Gascoigne*, 11 Tex. 455; see, also, *Ewing v. Ewing*, 24 Ind. 470.)

In *Giblin v. Jordan*, 6 Cal. 418, it is said that "A rule once established and firmly adhered to may work apparent hardship in a few cases, but in the end will have more beneficial effect than if constantly deviated from." And again: "Courts are permitted to exercise a wide discretion, and judges are not expected, or required, to overturn principles which have been considered and acted upon as correct, thereby disturbing contracts and property, and involving everything in inextricable confusion, simply because some abstract principle of law has been incorrectly established in the outset. The books are full of cases in which learned judges have acknowledged the errors committed by themselves, or their predecessors, and at the same time refused to overthrow the rule established."

Even, however, if this court were not bound by the decision in the Wyandotte county case, in 16 Kas. 587, upon the maxim of *stare decisis*, (which I think it is,) yet the rule adopted in the fourth proposition of the syllabus of that case is so reasonable, fair and just that it ought to be the law, not only in this state, but in every other state. A tax-payer in Kansas ordinarily has sufficiently heavy burdens to bear when he promptly pays or tenders all taxes lawfully levied against him or upon his property, without being compelled to go into a court of equity in the first instance to prevent the collection of unjust and illegal exactions, made without any authority of law, and in violation of the constitution of the state. The law declared by the court below and favored in the dissenting opinion, although sustained by very many able and respectable courts, is unjust, harsh, and, in my opinion, without any good reason for its support. Of all the powers conferred by the state upon cities, that of taxation is most often abused, and courts ought not to favor such abuse by throwing around the attempted collection of unjust, illegal and unconstitutional taxes such protec-

46 — 47 KAS.

tion as will doubly burden the tax-payer, by requiring of him the expenditure of large sums of money as attorney fees in a court of equity to protect his rights from such illegal and unconstitutional exactions, when he tenders all legal taxes in due time, and, after pointing out the special taxes or exactions which are unjust, illegal, and unconstitutional, objects and protests against their collection.

A payment of illegal and unconstitutional exactions, under such objection and protest, is not in any fair sense free and voluntary.