THE OTTAWA UNIVERSITY, *Appellee*, v. J. L. STRATTON *et al.* (THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FRANKLIN, *Appellants*).

No. 16,876.

### SYLLABUS BY THE COURT.

1. TAXATION—*Constitutional Exemptions Can Not be Curtailed by Legislature.* Section 1 of article 11 of the constitution exempts from taxation all property used exclusively for educational purposes. The legislature is powerless to limit the exemption to not exceeding ten acres of ground in any one case when a larger quantity is used exclusively for educational purposes, and section 2, chapter 408, Laws 1907 (Gen. Stat. 1909, § 9216) is invalid so far as it attempts to impose such a limitation.

2. ILLEGAL TAXES—*Paid under Protest May be Recovered.* An incorporated institution of learning owned a tract of land comprising approximately 33 acres which it used exclusively for educational purposes. By proceedings regular in form the excess above ten acres was taxed for the year 1908. On July 31, 1909, the county treasurer gave notice to the owner that if the taxes, which were delinquent, were not paid the land taxed would be advertised for sale. Thereupon the owner paid the taxes and accrued penalties, protesting at the time that they were illegal and that they were paid for the purpose of saving the land from tax sale. When the payment was made the owner had full knowledge of all the facts regarding the invalidity of the taxes and had been advised that they were illegal. The tax sale would not have occurred until the first Tuesday in September following the payment and a tax deed would not have been issued until three years after the sale, during which time the owner's possession would not have been disturbed. *Held*, the payment was not voluntary and the amount of illegal taxes may be recovered.

Appeal from Franklin district court. Opinion filed July 7, 1911. Affirmed.

*W. B. Pleasant*, county attorney, for the appellants.
*F. M. Harris*, for the appellee.

The opinion of the court was delivered by

BURCH, J.:   The plaintiff conducts an institution of learning at the city of Ottawa, and is the owner of a tract of land containing 32.93 acres, which is used exclusively for educational purposes.   In the year 1908 the city assessor assessed all of this real estate except ten acres, and by proceedings under the tax law, regular in form, taxes were duly extended against it, which the plaintiff did not pay.   On July 31, 1909, the county treasurer notified the plaintiff that unless such taxes, which, together with the added penalties, then amounted to $114.33, were paid, the land would be advertised for sale according to law.   Thereupon the plaintiff paid the sum demanded, protesting at the time that the taxes were illegal and that they were paid for the purpose of saving the land from tax sale.   At the time the plaintiff made the payment it had full knowledge of all the facts regarding the invalidity of the taxes, and had been advised that they were illegal.   The tax sale would not have occurred until the first Tuesday in September following the payment.   If sold the land would have been bid in by the county, and if unredeemed the land would have been held by the county for three years before conveyance, without disturbing the plaintiff's possession.   On August 5, 1909, the plaintiff brought suit to recover the money it had paid into the county treasury under the circumstances stated.   At the trial the court made special findings of the foregoing facts and rendered judgment in favor of the plaintiff.   The county appeals.

The taxes in question were assessed against the whole tract belonging to the plaintiff, less ten acres, because of the limitation upon the amount of property exempted from taxation contained in section 2, chapter 408, Laws of 1907 (Gen. Stat. 1909, § 9216), which reads as follows:

"That the property described in this section, to the

extent herein limited, shall be exempt from taxation: "First, All buildings used exclusively as places of public worship, as public schoolhouses, or both, with the furniture and books therein contained and used exclusively for the accommodation of schools and religious meetings, together with the grounds owned thereby, not exceeding in any one case ten acres, if not leased or otherwise used with a view to profit."

Section 1 of article 11 of the constitution provides as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation."

The constitution of this state cannot be amended by the legislature alone, either by the passage of a bill or otherwise. That result can be accomplished only by means of a popular referendum. If two-thirds of all the members elected to both houses concur, the legislature may submit a proposition to amend the constitution to the people for their adoption or rejection, or may submit to the people a recommendation to call a convention to revise, amend or change the constitution. But without a majority vote of the people upon a proposition duly submitted to them, or without the affirmative action of a convention duly ordered by the people, the legislature can no more limit the constitutional exemption allowed to educational institutions by its action than the governor could do so by an executive order or than this court could do so by a judicial decree. The constitution did not leave it to the legislature to say how much property used exclusively for educational purposes by a single institution shall be exempt. The people in constituent assembly decided that question for themselves and ordained that, no matter who the owner may be, or what the kind or quantity of

property may be, *all* property used exclusively for educational purposes shall be exempt from taxation.

Use and not quantity controls.  (*Washburn College v. Comm'rs of Shawnee Co.*, 8 Kan. 344; *Vail v. Beach,* 10 Kan. 214; *St. Mary's College v. Crowl, Treasurer,* &c., 10 Kan. 442; *Stahl v. Educational Assoc'n*, 54 Kan. 542.)

Under these circumstances this court can recognize none but the fundamental law, and the fact having been established that all the property involved is used exclusively for educational purposes, all of it is exempt from taxation and the taxes in controversy were levied against it without authority of law.

The question remains whether the payment made by the plaintiff was voluntary within the rule forbidding the recovery of illegal taxes voluntarily paid.  The rule was stated in the opinion in the case of *Wabaunsee Co. v. Walker*, 8 Kan. 431, in the following language:

"Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of the same, such payment must be deemed to be voluntary, and can not be recovered back; and the fact that the party at the time of making the payment files a written protest does not make the payment involuntary." (p. 436.)

This language, with the omission of the word "or" preceding the words "unless to release his person or property from detention," is adopted as the syllabus of the decision.  In that case Walker's land had been sold for taxes and the taxes for subsequent years had been entered on the book of tax sales as provided by law.  The tax certificates were held by the county. While they were so held no deed could issue and no immediate transfer was threatened.  Walker redeemed and was charged 50 per cent interest instead of 25 per cent, the lawful rate.  His action was for the recovery

of the excess interest, which he knew to be illegal and which he protested against paying because illegal at the time he paid it.

In the case of *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kan. 587, the fourth paragraph of the syllabus contains the matter quoted from the opinion in Walker's case. The fifth paragraph of the syllabus reads as follows:

"Where all steps for determining the amount of a tax upon personal property have been taken, the tax roll is complete and in the treasurer's hands, the taxes due, and it is made the duty of the treasurer at a specified date to issue a warrant to the sheriff to collect all unpaid taxes on personal property, and the duty of the sheriff within sixty days thereafter to levy upon and sell sufficient personal property to pay such taxes, penalty, and costs, and no discretion is given to anyone to change the amount of the tax, or the time or manner of its collection, a payment to the treasurer of the tax, protesting its illegality, declaring that payment is made solely to avoid the issue of process, and asserting an intention to sue for the sum illegally paid, should be considered an involuntary payment—one made to prevent an immediate seizure of the taxpayer's property, although such payment was made seventeen days before the time fixed for the treasurer to issue his warrant."

In the opinion it is said that there is no reason to doubt the correctness of the rule as stated in the opinion in Walker's case, but it is further said:

"Was this payment to prevent an immediate seizure of the property of plaintiff in error? If the warrant had actually been issued by the treasurer, and in the hands of the sheriff, who was demanding payment and threatening seizure, there would be no question, for in the language of the supreme court of Massachusetts, in *Boston Glass Co. v. Boston*, 4 Metc. 181, the warrant 'is in the nature of an execution running against the property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability.' But here no warrant had issued. None could legally issue for seventeen days, nor could the company's property

Ottawa University v. Stratton.

be in any manner disturbed before that time—so that there was no danger of instantaneous seizure. On the other hand there was no further inquiry to be made by any officer or tribunal. The amount of the tax was fixed beyond any opportunity for review. There was no discretion with anyone, as to whether a warrant should or should not issue, a levy should or should not be made. The machinery for adjusting the amount of the tax had completed its work, and was at rest; only the machinery for collecting was in motion, and it moved with the certainty of fate, and the rapidity of time to the finality of seizure and sale. Where the law is imperative, and, giving no discretion, commands the issue of the warrant at a definite time, and the levy under that warrant within a fixed time thereafter, must an individual wait until the last moment, and pay only just as the officer is seizing his property, or may he assume that the officers of the law will obey its precepts, and when all opportunity for consideration, correction, and change has passed, all discretion ended, and the tax roll is in the treasurer's hands, waiting only the lapse of a few days to ripen into a warrant and seizure, may he not then pay to the treasurer, protesting against the legality, and asserting his intention to contest? Does he not then pay to prevent an immediate seizure, one that is certainly and presently impending? Wherein does the state suffer wrong, or what advantage does it lose by holding that to be an involuntary payment? . . . In *Allen v. Burlington,* 45 Vt. 202, the court says: 'If the plaintiff was constrained to pay the tax to save his property and to avoid a penalty and costs, it was not a voluntary payment. (*Babcock v. Granville,* 44 Vt. 326; *Henry v. Chester,* 15 Vt. 469.) It is not necessary that the warrant should have been issued, and the levy instant. If he expected and had a right to expect that in due course the warrant would issue, and the collection be enforced with costs, and that unless he complied with the one alternative he must submit to the other, and he paid, because otherwise the other alternative would be upon him, with protest that he paid because thus constrained, it is not such voluntary payment that he would be precluded from recovering back the taxes so paid, if they were illegally imposed.'

"It seems to us, then, that according to a fair and

reasonable interpretation of the rule, the railway com-
pany paid this first half of the, tax under such circum-
stances that it should be considered an involuntary pay-
ment.    It was to prevent a seizure as certainly im-
pending as the law could make it, and one also presently
impending." (pp. 597-600.)

Justice Valentine concurred in the first four para-
graphs of the syllabus and the corresponding portions
of the opinion only, and did not participate in the
judgment rendered.

In the case of *A. T. & S. F. Rld. Co. v. City of Atch-
ison,* 47 Kan. 712, illegal taxes were assessed against
personal property.    They were paid on December 17.
The taxes would not have been delinquent or subject
to the addition of penalty for nonpayment until De-
cember 21 and no tax warrant could have been issued
until the 10th of the following January.    It was held,
following the Wyandotte county case (16 Kan. 587),
that the illegal taxes were not voluntarily paid and
that they could be recovered.    Justice Valentine filed
a dissenting opinion, in which the following language
occurs :

"The tax was paid on December 17, 1887; therefore,
presumably it was levied in August, 1887, and was
placed on the tax roll sometime between that time and
November 1, 1887; and on November 1, 1887, the tax
roll was placed in the hands of the county treasurer
for collection; and on December 17, 1887, the plaintiff
paid the tax; and during all that time, from August
up to December 17, 1887, the plaintiff had ample op-
portunity to commence an action to test the validity
of the tax; but it did not do so.    And why did it pay
the same at that particular time and without any con-
test?    It is suggested that a penalty might have been
added after December 20, if the tax had not been paid
prior thereto; but this could not affect the plaintiff's
rights.    A valid penalty could never be added to a void
tax.    The penalty would be as void as the tax itself,
and no lapse of time or anything else could ever make
either the void tax or the void penalty valid.    The plain-
tiff could at any time have avoided both.    It is also

suggested that a warrant for the collection of the tax might have been issued by the treasurer. Now it would be illegal and wrongful for the treasurer at any time to do so; and why must it be supposed that he might have committed such wrongful and illegal act? But suppose he might have done so; still, it must not be supposed that he would have done so until after January 10, 1888; for a county treasurer can not, under any circumstances nor in any case, issue a legal tax warrant for delinquent taxes until after January 10. (Tax Law, § 92; Gen. Stat. of 1889, par. 6941.) Hence the plaintiff was under no possible compulsion to pay the tax when it paid the same, nor could it have been until after January 10, 1888—more than 24 days thereafter. The rule governing in such cases is stated in the case of *Wabaunsee Co. v. Walker,* 8 Kan. 431, 436, as follows:" (Quoting the language embodied in the fourth paragraph of the syllabus.) . . . "This rule has been quoted approvingly and followed twice by the supreme court of the United States. (*Lamborn v. Co. Commissioners,* 97 U. S. 181, 186, 187; *Railroad Co. v. Commissioners,* 98 id. 541, 543, 544.)" (47 Kan. 715, 716.)

Chief Justice Horton filed an opinion, concurring in the decision of the court, which, after quoting from *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.,* 16 Kan. 587, reads as follows:

"This decision was subsequent to the decision of *Wabaunsee Co. v. Walker,* 8 Kan. 431, rendered by this court in 1871, and if it differs or modifies that decision in any way, the decision in the Wyandotte county case must be considered as the law of this state, as interpreted by its highest legal tribunal, rather than the earlier decision. The decision in the Wyandotte county case very clearly and properly construes the old case of *Wabaunsee Co. v. Walker,* 8 Kan. 436, and ever since' that decision the construction so given it by the court in the declaration of the law as announced in the fifth proposition of the syllabus thereof, has been the rule in this state in such cases, and is very justly the rule now. Further, this decision has remained unchallenged and unchanged ever since 1876. . . . Even, however, if this court were not bound by the decision in the Wyandotte county case, in 16 Kan. 587, upon

the maxim of *stare decisis*, (which I think it is), yet the rule adopted in the fourth proposition of the syllabus of that case is so reasonable, fair and just that it ought to be the law, not only in this state, but in every other state. A taxpayer in Kansas ordinarily has sufficiently heavy burdens to bear when he promptly pays or tenders all taxes lawfully levied against him or upon his property, without being compelled to go into a court of equity in the first instance to prevent the collection of unjust and illegal exactions, made without any authority of law, and in violation of the constitution of the state. The law declared by the court below and favored in the dissenting opinion, although sustained by very many able and respectable courts, is unjust, harsh, and, in my opinion, without any good reason for its support. Of all the powers conferred by the state upon cities, that of taxation is most often abused, and courts ought not to favor such abuse by throwing around the attempted collection of unjust, illegal and unconstitutional taxes such protection as will doubly burden the taxpayer, by requiring of him the expenditure of large sums of money as attorney fees in a court of equity to protect his rights from such illegal and unconstitutional exactions when he tenders all legal taxes in due time, and, after pointing out the special taxes or exactions which are unjust, illegal, and unconstitutional, objects and protests against their collection." (47 Kan. 719-722.)

No other decision of the court makes its position any clearer and the foregoing quotations are given at length because they contain all the expressions of the justices of the court which throw light upon the subject. Without commenting at length upon the arguments advanced in these opinions, or the facts involved in the cases in which they were delivered, the Wyandotte county case (16 Kan. 587) and the City of Atchison case (47 Kan. 712) furnish the basis for the following conclusions:

In a general sense there should be an immediate and urgent necessity for the payment of the illegal demand; or such payment should be made to release person or property from detention or to prevent an immediate

Ottawa University v. Stratton.

seizure of person or property. Immediate, however, means certainly impending rather than upon the point of instantly taking place. The inevitableness of the result, unless forestalled by payment, is the matter of primary consequence rather than the nearness of the time when the tax proceeding will culminate. When the taxing process has passed the stage in which the amount and character of the tax may be reviewed, and has reached the stage of collection, no discretion is left in the collecting officers and it is to be presumed that they will follow the law and use all the means provided for securing payment of the tax. It is not material that there may be time and opportunity for proceedings at law or in equity to prevent a seizure or a sale of property or that a seizure or a sale of property may be avoided by subsequent proceedings. The fact that serious injury will follow unless payment be made or legal proceedings be instituted gives the property owner the alternative of paying under protest. Threatened cumulative burdens upon the property involved and inconveniences in the exercise of lawful rights may be considered as matters of coercion in connection with ultimate deprivation, in determining whether a payment is voluntary or involuntary. So long as legal proceedings of some kind will certainly be required to protect against the enforcement of the illegal tax, the state is not in a position to dictate the course the taxpayer should pursue, and no government should look with complacency upon money in its treasury which has been collected from a taxpayer contrary to established law. There is no difference of rule in respect to involuntary payments of taxes upon real and personal property. The question in each instance is whether the will of the taxpayer was constrained.

From the foregoing it will be seen that, while the fundamental principles governing the decision of Walker's case (8 Kan. 431) were not affected, those

principles were given a much less harsh and. rigid application in favor of the taxpayer in the later cases.

In this case it devolved upon the taxing officers to determine in the first instance whether or not all the real estate involved was used for educational purposes and whether or not such use was exclusive of all others. The question could not be solved by mere view or upon common public information. An investigation of the facts was necessary, and the conclusion evidenced by placing all the property but ten acres on the tax roll was *prima facie* correct. Consequently a sale of the land for taxes would have been apparently valid and would have clouded the plaintiff's title. An advertisement of the land for sale, with the attending cost, was imminent, and the sale itself would have taken place in a little more than a month. These threatened invasions of the plaintiff's rights created an immediate and urgent necessity for payment of the illegal demand, within the meaning of the law.

The judgment of the district court is affirmed. . .