Nos. 80,805
80,806

REGENCY PARK, LP, *et al., Plaintiffs/Appellants,* v. CITY OF TOPEKA, KANSAS, *Defendant/Appellee.*
TARWATER, INC. *et al., Plaintiffs/Appellants,* v. CITY OF TOPEKA, KANSAS, *Defendant/Appellee.*
(981 P.2d 256)

Opinion filed June 4, 1999.

*Robert D. Hecht*, of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *Deborah L. Hughes*, of the same firm, was with him on the briefs for appellants.

*Ann L. Hoover*, of Topeka, argued the cause, and *Linda P. Jeffrey*, city attorney, was with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: In this consolidated appeal, plaintiffs, Regency Park, LP, *et al.*, and Tarwater, Inc. *et al.*, paid stormwater utility charges under City of Topeka (City) ordinances which were later declared invalid and appeal the trial court's decision that they are not entitled to be reimbursed by the City for amounts paid under the ordinances.

The facts are not in dispute and reveal the following history of these two cases.

On July 7, 1992, the City adopted Ordinance Nos. 16472 and 16473 (collectively, the ordinance) which established a stormwater utility system deemed necessary to collect, convey, treat, and release stormwater so as to reduce hazards to property and life, enhance health and welfare, and improve water quality in the surface water system. The ordinance established a stormwater drainage fund to be funded by fees to be paid by all property owners or nonowner users in an amount set forth in a monthly rate schedule based on the square footage of impervious area of each property.

The ordinance in question provided that unpaid drainage fees were subject to a 5% per month, not to exceed 25%, late fee. The ordinance further provided that the failure to pay drainage fees would subject a property owner or nonowner user to discontinuance of utility services and also to a lien on the subject property for the amount of unpaid fees.

The ordinance contained an appeal provision which provided that any person disagreeing with the calculation of the stormwater drainage fee could appeal such a determination to the Director of

Public Works. It is undisputed that none of the plaintiffs in this case appealed to the Director of Public Works under this provision.

On May 30, 1996, the District Court of Shawnee County, in the case of *Mr. & Mrs. E.R. Stadler, et al. v. City of Topeka*, No. 94-CV-0108, determined the ordinance was invalid, enjoined the City from further collection of fees, and ordered the City to refund collected charges to the plaintiffs therein. An attempt to certify this case as a class action was denied. Neither party appealed.

The Tarwater case was filed June 20, 1996, and the Regency Park case was filed November 5, 1996. Each suit relied on the result in the *Stadler* case; requested refund of all stormwater utility fees paid; requested class action certification; asked for an accounting of all funds, fees, or revenue received under the ordinance; and asked for allowance of fees, expenses, and costs.

After discovery, the trial court granted the City's motion for summary judgment based on what is known as the "volunteer rule," holding plaintiffs payments were all made voluntarily and not under protest. The trial court found there were no genuine issues of material facts despite the filing of an affidavit of the principal of numerous Tarwater plaintiffs stating that affiant had opposed the stormwater drainage fees and made such opposition known to City officials. The affiant also claimed the payments had been made to keep the water and sewer systems on the properties operable and the premises habitable.

After a motion for reconsideration filed by the plaintiffs in both cases was denied, the plaintiffs have appealed.

The cases were transferred to us from the Court of Appeals pursuant to K.S.A. 20-3018(c).

Although review of the granting of a motion for summary judgment normally requires that we consider the record in the light most favorable to the parties defending against the motion, *Moorhouse v. City of Wichita*, 259 Kan. 570, 576, 913 P.2d 172 (1996), the principle question in this appeal is the legal effect of the prior judgment of the district court declaring the ordinance invalid, which is a question of law over which our review is unlimited. See *Davis v. City of Leavenworth*, 247 Kan. 486, 498, 802 P.2d 494 (1990).

The same trial judge who heard these cases also was the judge who declared the ordinances invalid in the *Stadler* case. The *Stadler* decision was based on the failure of the City to comply with K.S.A. 12-3103 of the Kansas Water Pollution Act, K.S.A. 12-3101 *et seq.* This section requires that before a municipality exercises the powers conferred under the act, the Secretary of Health and Environment shall adopt a resolution finding that

"(1) [t]he sewer system of such municipality is inadequate to meet the standards of the secretary of health and environment; and (2) the construction, reconstruction, development or redevelopment of a sewer system of such municipality is necessary in the interest of public health and welfare of the residents of the state." K.S.A. 12-3103.

The Secretary had not issued the required resolution before the ordinance was adopted. In addition, the trial court held § 4 of Ordinance No. 16473 provided for a service fee in a manner other than charges based on a "per unit volume of water used and based on the strength and volume of sewage contributed" was in conflict with K.S.A. 12-3104(a).

Based on these findings, the ordinances at issue in *Stadler* and here were held to be invalid. It is important to note that the decision was not that the ordinances were unconstitutional, that they were void, or that they were not related to a matter of public need and necessity.

Here, the trial court's decision below was based on its finding that prior to the ordinances in issue being declared invalid, fees collected were paid voluntarily. Based on the relevant law of *Palmer v. First Nat'l Bank of Kingman*, 10 Kan. App. 2d 84, 90, 692 P.2d 386 (1984), the trial court held:

"One who pays a tax voluntarily, that is, without compulsion or duress, has no valid claim for its repayment. This is what is known as the 'volunteer rule,' which provides that a party who, without mistake, fraud, or duress, voluntarily pays money on a demand which is not enforceable against him, cannot recover the amounts paid."

This rule was deemed by the trial court to be the law in most states, citing *Spencer v. City of Los Angeles*, 180 Cal. 103, 179 P. 163 (1919); *City of Louisville v. Belknap Hdw. & Mfg. Co.*, 145 Ky. 266, 140 S.W. 185 (1911); *Central Savings Bank & Trust Co.*

*v. City of Monroe,* 194 La. 743, 194 So. 767 (1940); *Nat. Bank of Detroit v. Detroit,* 272 Mich. 610, 262 N.W. 422 (1935); *Brink v. Kansas City,* 355 Mo. 860, 198 S.W. 2d 710 (1947); *Manufacturer's Casualty Ins. Co. v. Kansas City,* 330 S.W. 2d 263 (Mo. App. 1959); *Salvaggio v. Houston Independent Sch. Dist.,* 709 S.W. 2d 306 (Tex. Civ. App. 1986).

The trial court dismissed as meritless the plaintiffs' argument that fee payments were not made voluntarily because their failure to pay would result in a penalty and water service termination. The court stated it was unaware of any tax that does not carry a penalty for nonpayment.

The trial court held it was uncontroverted plaintiffs paid the fees voluntarily despite the affidavit stating that complaints had been made to representatives of the City including the mayor. The trial court found that complaining to city representatives was insufficient to make payment involuntary, particularly where there is an ordinance-provided methodology for appeal, of which the plaintiffs had failed to take advantage.

The plaintiffs on appeal raise two issues: (1) The trial court erred in determining they were not entitled to refund of stormwater drainage fees by holding (a) the fees were required to have been paid "under protest" and (b) they had voluntarily paid the fees; and (2) the trial court failed to determine that its previous decision in *Stadler* operated as res judicata or collateral estoppel to compel a judgment that these plaintiffs were also entitled to a refund.

The plaintiffs contend no Kansas case requires a formal protest as a pre-condition to a valid claim for repayment. They distinguish *Palmer,* 10 Kan. App. 2d at 90-91, as not being a case requiring a formal protest. Plaintiffs argue that the payment in *Palmer* was made after the tax warrant was issued and this was sufficient compulsion and duress to make the payment involuntary, despite the wording in *Palmer* relied on by the trial court here.

The plaintiffs also cite cases from the 1870's to the 1930's to contend a formal protest is not required and thus payments were involuntarily made: *Wabaunsee Co. v. Walker,* 8 Kan. 431 (1871); *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.,* 16 Kan. 587 (1876); *A. T. & S. F. Rld. Co. v. City of Atchison,* 47 Kan. 712, 715, 28

Pac. 1000 (1892); *Ottawa University v. Stratton*, 85 Kan. 246, 254-56, 116 Pac. 892 (1911); *Salthouse v. McPherson County*, 115 Kan. 668, 672, 224 Pac. 70 (1924), *Bank of Holyrood v. Kottmann*, 132 Kan. 593, 594-95, 296 Pac. 357 (1931) and *First National Bank v. Sheridan County Comm'rs*, 134 Kan. 781, 782-83, 8 P.2d 312 (1932).

As to the appeal provisions of the ordinance, the plaintiffs point out that Section 6E states that "[a]ny person disagreeing with the calculation . . . may appeal such determination," only allows an appeal as to irregularities or errors, not to a challenge to the authority to assess the fee.

Finally, the plaintiffs argued below that the *Stadler* case should result in the application of res judicata or collateral estoppel and require the requested refunds. The plaintiffs recognize the parties in this case differ from the *Stadler* case, but contend the facts and issues are the same. They make no res judicata argument on appeal, as it obviously does not apply. But, they do argue that the more modern trend is to reject the strict application of the mutuality requirement of collateral estoppel and allow it to be used offensively, under the holding of *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).

The City suggests this is a case of first impression for us but that the voluntary payment rule applies to payment of special assessments and fees, just as it has in tax cases, relying on *State, ex rel., v. Board of County Comm'rs*, 172 Kan. 601, 610, 242 P.2d 527 (1952), *Palmer*, 10 Kan. App. 2d at 90, and *Ekan Properties v. Wilhm*, 262 Kan. 495, 502, 939 P.2d 918 (1997). The City argues no plaintiff protested the payments, although the trial court did not rule that a formal protest was required. It argues that at common law an action existed for recovery of taxes paid involuntarily, but no such right existed where the taxes were voluntarily paid.

Additionally, the City argues that, although the trial court did not make payment under a formal or written protest a pre-condition for recovery, authority such as *ERA Aviation, Inc. v. Campbell*, 915 P.2d 606, 611 (Alaska 1996), and the cases cited therein, reasoned that requiring a protest at the time of payment in order to

seek a refund against a government entity was a necessary public policy because

"[t]he burden of requiring a taxpayer to file a protest at the time of payment of the tax is at most minimal. On the other hand the requirement of a protest serves the important function of providing state government with notice of the claimed tax illegality, the grounds advanced in support of the claimed illegality, and affords the state the opportunity to fashion budget appropriations, or expenditures, taking into account the magnitude of the claimed tax illegality."

The City contends the fact that payments were continued, even though the plaintiffs knew the *Stadler* case was pending, shows plaintiffs failed to meet their burden of establishing the payments were involuntary.

Finally, as to Regency Park and Tarwater's argument that res judicata and collateral estoppel apply, the City claims such arguments were not advanced below, that res judicata is simply not applicable because totally different parties are involved here than in the *Stadler* case, and strict application of the mutuality requirement is still the Kansas rule, as shown by *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 473, 712 P.2d 1199 (1986). A more recent case upholding this requirement is *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 670, 941 P.2d 1321 (1997).

In beginning our analysis, we first note that both parties have referred to the payments made by the property owners as being fees, assessments, or taxes and we have previously attempted to mirror the parties' characterization of the payments made. In actuality, we said in *Jennings v. Walsh*, 214 Kan. 398, 401, 521 P.2d 311 (1974), that

"[g]enerally speaking, sewer charges by a municipality must be tied to the use of the services and the fee imposed, under most authorities is not a tax, but a charge for services rendered. (64 C.J.S., Municipal Corporations, § 1805, pp. 265, 273.) In 11 McQuillin [3d ed. rev.], Municipal Corporations, Sewers and Drains, § 31.30a, p. 248, the rule is stated in this fashion:

" 'Sewer charges and fees are not taxes or special assessments . . . but are in the nature of tolls or rents paid for services furnished or available. . . .' "

We recognize there is a difference between the handling of stormwater and sewage, but both are necessary to the health and

welfare of citizens and property owners. Payments for the handling and disposing of either should not be characterized as a tax.

11 McQuillin, Municipal Corporations § 31.30.10 (3d ed. rev. 1991) treats payments relating to sewers and drains in this manner:

"The municipality may fix fees, rents, charges, and rates for making connections with and for using its sewers and drains, outside the municipal limits, as well as within, and may, by law, have a lien upon the property for the fees owed. Sewer charges are usually established by ordinances, the validity of which is presumed.

"Sewer charges and fees are not taxes or special assessments (although occasionally they are so regarded), but are in the nature of tolls or rents paid for services furnished or available."

We do not believe the terminology used is critical to the result in this case but point out the difference to show that as to the disposal of stormwater (precipitation runoff) a fee, charge, toll, or a rent is paid for services actually furnished and necessary for the quiet enjoyment of the property rights of each plaintiff landowner.

Having passed up the opportunity to distinguish all of the early Kansas cases in one easy finding that they involve tax collection while this case concerns a fee, toll, rent, or charge paid for service directly received, we note there is a broader reason than the one utilized by the trial court to deny refund of the payments made under the ordinances.

The ordinance in issue that was held invalid in *Stadler* was clearly for a valid public purpose and its invalidity was not based on any reason making it void from its inception. Such might have been the case had it been an attempt to collect money from parties not connected to a municipal sewage system, as existed in *Jennings v. Walsh,* or if the ordinance had been obviously unconstitutional, if the City was without jurisdiction, or if the City had attempted to reach property exempt as a matter of law.

Another statement from 6 McQuillin, Municipal Corporations § 20.14 (3d ed. rev. 1998) is applicable to this line of reasoning:

"Where the corporation has power to pass the ordinance for a certain purpose, but exercises that power in a unauthorized manner, the ordinance is valid and binding until set aside by legal proceedings instituted for that purpose."

It is not that the City was precluded from reaching the result it desired to accomplish, but only that it failed to obtain the required

state approval and follow designated state statutes. As such, we hold the City's acts, collections of money, and disbursements under the facts of this case were merely voidable and not void.

The distinction between actions void and voidable was pointed out in *Frazier v. Jeakins*, 64 Kan. 615, 626, 68 Pac. 24 (1902), where we cited *Ewell v. Daggs*, 108 U.S. 143, 150, 27 L. Ed. 682, 2 S. Ct. 408 (1883), which stated:

"A distinction is made between acts which are *mala in se* which are generally regarded as absolutely void, in the sense that no right or claim can be derived from them; and acts which are *mala prohibita*, which are void or voidable, according to the nature and effect of the act prohibited."

In a case involving a tax assessment on leased airport space, *Dade County v. Transportes Aereos Nacionales, S.A.*, 298 So. 2d 570, 572 (Fla. Dist. App. 1974), a voidable assessment was defined "as one which is made in good faith but is irregular or unfair and the taxpayer must move in due time and must make a full and clear showing of right to appropriate relief."

We affirm the trial court based on our holding that the ordinance in issue was only voidable and was in full force and effect until declared to be invalid, thereby prohibiting any refund of the toll, rent, fee, or charge paid. However, we also believe the trial court properly granted judgment to the City based on a correct application of the volunteer rule under the undisputed facts of this case.

The voluntary payment rule is a long-standing rule of law which states that the voluntary payment of taxes or special assessments cannot be recovered even when the assessment or tax itself is later declared invalid. 14 McQuillin, Municipal Corporations § 38.333 (3d. ed. rev. 1998). See *City of Louisville v. Belknap Hdw. & Mfg. Co.*, 145 Ky. 266, 267-68, 140 S.W. 185 (1911); *Wash. Sub. San. Comm'n v. Mitchell & Best*, 303 Md. 544, 572, 495 A.2d 30 (1985); and *City of Wewoka v. Dunn*, 201 Okla. 286, 288, 205 P.2d 291 (1949). Kansas has long recognized the voluntary payment rule with regard to the payment of taxes. See *Wabaunsee Co. v. Walker*, 8 Kan. 431, 436-37 (1871). In *Palmer*, 10 Kan. App. 2d at 90, the Court of Appeals explained the rule as follows:

"One who pays a tax voluntarily, that is, without compulsion or duress, has no valid claim for its repayment. [Citations omitted.] This is what is known as the

'volunteer rule,' which provides that a party who, without mistake, fraud, or duress, voluntarily pays money on a demand which is not enforceable against him, cannot recover the amounts paid. [Citation omitted.]"

Although the voluntary payment rule is stated in reference to payment of a tax, it applies to the payments under the stormwater utility ordinance, which could be deemed to be within the meaning of the terms tolls, rents, charges, or assessments. See 14 McQuillin, Municipal Corporations § 38.333 (3d ed. rev. 1998).

Before discussing the cases that Tarwater and Regency Park contend make their payments involuntary, we note that most predate 1929, when statutory appeal requirements came into existence. These statutes required a party desiring to protest and claim a refund of taxes to file a written statement of the grounds of protest, the part protested, and any law, statute or facts relied upon. This provision is the beginning of our present-day K.S.A. 79-2005.

No legislative history is available regarding the purpose for this enactment. However, it appears an ongoing question existed concerning the right to obtain refunds for taxes thought to be erroneously collected and the detriments this placed on governmental units where the funds were budgeted or otherwise committed to public use. The specific wording of the statute enacted was as follows:

"Any person, association, partnership or corporation, before protesting the payment of his taxes, shall be required, at the time of paying said taxes, to make and file a written statement with the county treasurer clearly stating the grounds on which the whole or any part of said taxes are protested, and shall further cite any law, statute, or facts on which such taxpayer relies in protesting the whole or any part of such taxes, and shall further state the exact portion of said tax which is being protested: *Provided*, That the county treasurer is authorized to disburse to the proper county funds all portions of such taxes not protested." L. 1929, ch. 291, § 1.

The authority of the cases cited by the plaintiffs is diminished by passage of this protest statute relating to claimed refunds of property taxes. The statute also appears to establish as a part of the policy of Kansas that before a refund of a tax may be considered, the correct statutory procedure had to be followed. Because the payments we deal with here are not property taxes, we cannot hold

that before any refund could be claimed for the payments under a stormwater utility ordinance, a written protest complying with statutory requirements is necessary or required to avoid a finding that the tolls, fees, charges, or assessments were voluntarily paid. Nevertheless, the statute is indicative of the policy of this State.

We are still left with the question of whether the plaintiffs here made voluntary payments when they complained about the assessments or charges but paid the amount without any verbal or written statement that they intended to demand the return of the amounts paid. It would have been helpful to the plaintiff to have begun an action to contest the validity of the ordinance, attempt to enjoin collection, attempt to broaden the terms of the appeal provision of the ordinance, or take any action which would put the City on notice that the money it was collecting was in jeopardy. In the absence of such actions, the trial court held the payments were voluntary. Regency Park and Tarwater contend the early Kansas cases do not support this finding.

*Wabaunsee Co. v. Walker*, 8 Kan. 431 (1871), held a payment to be voluntary even though it was made to prevent seizure of the property and a written protest was filed at the time of the payment. This holding appears to have been relaxed, for in *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.*, 16 Kan. 587, 600 (1876) and *A. T. & S. F. Rld. Co. v. City of Atchison*, 47 Kan. 712, 715, 28 Pac. 1000 (1892), a payment to stop the issuance of a tax warrant was deemed involuntary. In the *City of Atchison* case, one-half of the tax assessed to pay a subscription to a private college was deemed involuntary although the payment of the second half of the taxes that was not yet due was deemed to have been voluntarily paid. The tax in the *City of Atchison* case was void, as we held the City of Atchison had no power to impose a tax to aid sectarian schools or promote private interests and enterprises.

The facts in the *City of Atchison* case are similar to those in *Ottawa University v. Stratton*, 85 Kan. 246, 256, 116 Pac. 892 (1911), where a tax was being assessed in violation of the constitutional exemption of property used for educational purposes. The owner paid the taxes and accrued penalties accompanied by a protest that they were illegal. It was held that the payment was invol-

untary. Both *City of Atchison* and *Ottawa University* differ from our facts, as Topeka's ordinance did not suffer from a constitutional infirmity and was facially valid at the time the payments were made by the plaintiffs.

The next case in this chronology is *Salthouse v. McPherson County*, 115 Kan. 668, 672, 224 Pac. 70 (1924), which again involved the attempt to collect an unconstitutional tax (a tax on government bonds exempt under federal law). The county attempted to claim that appeal to the tax commissioner was the exclusive remedy, but the court held that where an effort is made to enforce an unconstitutional statute, an action to recover money illegally exacted is proper.

The *Salthouse* opinion held that recovery is not barred by the fact plaintiff might have obtained an injunction against the collection of the taxes, the payment was involuntary, a written protest was not required by the statute, and differentiated between a tax irregularly enacted and one enacted without jurisdiction, "as in this case of an attempt to reach property which is exempt as a matter of law upon the admitted or established facts, or to enforce an unconstitutional statute." 115 Kan. at 670-72. *Salthouse* is factually different from our case in that it involved the attempted collection of a tax found to be unconstitutional. It is not authority for finding the payments in our case to be deemed involuntary.

We finally mention two bank cases raised by plaintiffs, *Bank of Holyrood v. Kottmann*, 132 Kan. 593, 594-95, 296 Pac. 357 (1931); *First National Bank v. Sheridan County Comm'rs*, 134 Kan. 781, 782-83, 8 P.2d 312 (1932), which were both based on facts from the 1920's. In these two cases, the tax payments were deemed involuntary, having been protested when paid. This is the end of this litigation in Kansas, as the 1929 enactment of the predecessor to K.S.A. 79-2005 established a required procedure. The cases on which plaintiffs rely are of limited historical interest and do not support plaintiffs' claim that their payments were involuntary.

We note the City also argues the plaintiffs failed to exercise the opportunity for appeal of the assessment. Section 6E of the ordinance, titled "Appeal of Dwelling Unit and Impervious Surface Calculation," states:

"Any person disagreeing with the calculation of the stormwater drainage fee, as provided in this Section, may appeal such a determination to the Director. An appeal shall be filed in writing and shall include a survey prepared by a land surveyor showing dwelling units, total property area, impervious area or non-residential developed area, as appropriate. The Director may request additional information from the appealing party. Based upon the information provided by the utility and appealing party, the Director shall make a final calculation of the stormwater drainage fee. The Director shall notify the parties, in writing, of the Director's decision."

The plaintiffs point out that while the ordinance provides for an appeal of the fee calculation, it does not specifically provide for an appeal of the validity of the ordinance itself. However, the appeal process provided in the ordinance gives the assessed party the opportunity to bring his or her complaints before the Director of Public Works and an avenue whereby those complaints may be heard before action is taken for nonpayment. But, the wording of the ordinance appears to limit the appeal rights to "any person disagreeing with the calculation." If we applied the appeal provision in the manner the City requests, it would have the effect of making the plaintiffs' failure to appeal thereunder a fatal failure to exhaust an administrative remedy. See *Zarda v. State*, 250 Kan. 364, Syl. ¶ 1, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992). This we are not prepared to do, as it would give the appeal provision scope and effect far beyond its limited wording.

The appeal provision did not provide the exclusive remedy for the plaintiffs claims. The failure to follow the appeal provision is not fatal to plaintiffs' arguments. It is only a fact to be considered, but does support the trial court's conclusion of law that the payments were voluntarily made.

The importance of informing an assessing authority of the involuntary nature of the payment cannot be overemphasized. Such notice "serves the important function of providing state government with notice of the claimed tax illegality, the grounds advanced in support of the claimed illegality, and affords the state the opportunity to fashion budget appropriations, or expenditures, taking into account the magnitude of the claimed tax illegality." See *ERA Aviation, Inc. v. Campbell*, 915 P.2d 606, 611 (Alaska 1996). In the case at hand, the plaintiffs did not take advantage of the appeals

process in the ordinance or of any other method which would have alerted the Director of Public Works that the payments were involuntary.

While we have set forth other reasons to support the result the trial court reached, we specifically find and hold the trial court correctly deemed the payments made to be voluntary and not subject to refund.

Finally, we reject plaintiffs' contention the trial court should have found its prior decision in the case of *Stadler, et al. v. City of Topeka* operated as res judicata or collateral estoppel in this case. In *Stadler*, the case in which the ordinance was declared invalid, the court ordered the plaintiffs' fees refunded. The fact payment was made of small refunds there has no effect on the result we now reach.

An issue is res judicata when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and identity in the quality of persons for or against whom claim is made. *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 720, 840 P.2d 1107 (1992). The requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 670, 941 P.2d 1321 (1997).

The clear flaw in plaintiffs' argument is that the plaintiffs were not a part of the *Stadler* suit or in privity with the plaintiffs in that suit. Therefore, there cannot be res judicata because of lack of identity in the parties to the action. Further, there cannot be collateral estoppel because there is no mutuality of parties.

Plaintiffs ask us to abandon the "mutuality of parties" requirement for collateral estoppel which we are not prepared to do. Everything we said in *KPERS v. Reimer & Koger Assocs., Inc.* need not be repeated. The claims of plaintiffs as to res judicata and collateral estoppel are without merit.

For the reasons we have stated here, the trial court correctly granted summary judgment to the City.

Affirmed.

DAVIS, J., not participating

ROBERT J. LEWIS, JR., J., assigned.