See also, 212 F.R.D. 512.

**Fenton McKENZIE, Plaintiff–Appellant,**

v.

**Kurt BERGGREN and Kurt Berggren, P.C., Defendants–Appellees.**

No. 02–2108.

United States Court of Appeals, Sixth Circuit.

May 18, 2004.

Laurie S. Longo, Laurie S. Longo, P.C., Ann Arbor, MI, for Plaintiff–Appellant.

Michael L. Updike, Secrest, Wardle, Lynch, Hampton, Truex & Morley, Farmington Hills, MI, for Defendants–Appellees.

Before GUY and GILMAN, Circuit Judges; and BARZILAY, Judge.*

## OPINION

GILMAN, Circuit Judge.

Fenton McKenzie was represented by Kurt Berggren in an employment discrimination action against Ford Motor Company. McKenzie settled his suit against Ford and, after unsuccessfully attempting to renounce his settlement agreement soon thereafter, brought suit against Berggren for legal malpractice, breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress. The district court granted summary judgment in favor of Berggren. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

McKenzie hired Berggren to represent him in an employment discrimination suit against Ford that was brought in a Michigan state court. At the time, McKenzie had claims pending with both the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC), but did not employ Berggren to represent him in those matters. He had also received a favorable arbitration decision under Ford's internal grievance procedure prior to retaining Berggren as counsel.

McKenzie's complaint in the Ford lawsuit set forth the following counts: (1) race discrimination, (2) breach of contract, (3) workers' compensation and retaliatory discrimination relating to the compensation claim, (4) retaliatory discrimination for the complaints filed with the Michigan Department of Civil Rights and the EEOC, and (5) disability discrimination. He settled his suit against Ford on May 12, 1999 for $260,000. Of that sum, $130,000 was assigned to his workers' compensation claim, $70,000 was in the form of a taxable payment, and $60,000 was designated for attorney fees. McKenzie soon had a change of heart and attempted to renounce the settlement agreement in a letter to the court on July 6, 1999. A hearing before the state-court judge was held on July 28, 1999. The judge refused to set aside the agreement after finding that it was knowingly and voluntarily entered into by McKenzie.

After his appeal of the state-court decision was dismissed for being untimely, McKenzie brought suit against Berggren in federal court based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). His brief summarizes the claims as follows:

(1) legal malpractice relating to Defendant's lack of preparation at trial and compromise of the Umpire's decision previously awarded Plaintiff;

(2) breach of contract relating to Defendant having misappropriated a larger percentage of attorney's fees than provided for by the parties' agreement and having settled claims expressly outside the scope of his authority:

(3) breach of fiduciary duty relating to Defendant having improperly obtained power of attorney to sign a self-serving settlement which included terms beyond the scope of those to which Plaintiff had

---

* The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

agreed and expressly beyond the scope of Defendant's authority; and

(4) intentional infliction of emotional distress.

McKenzie's brief also summarizes the specific instances of negligence that allegedly support his claims:

(1) Berggren failed to adequately prepare Plaintiff for trial and conducted very little preparation in terms of interviewing the witnesses or deposing them in advance of trial to find out what the opposition witnesses were going to say. Although he listed over 60 witnesses for Plaintiff, including several doctors as well as actuarial experts who were to give testimony on economic damages, Berrgren arranged to have only three witnesses present for trial, only one of which he called to testify. Two were late and the trial court penalized Plaintiff by refusing to allow their testimony;

(2) Berggren failed to file motions in limine relative to Plaintiff's background, specifically involving some criminal events which were outside the ten-year window and would not have risen to the level of a felony, which became the subject of opening remarks by opposing counsel;

(3) Berggren had subpoenaed records during discovery but either had not gotten them and had not followed up on it, or had not marked or even reviewed them before trial; and

(4) Berggren failed to introduce evidence on proximate cause, for example, opinion testimony that the situation in the workplace caused Plaintiff's psychiatric suffering.

Both parties moved for summary judgment. The district court granted Berggren's motion and denied McKenzie's. It held that McKenzie was collaterally estopped from arguing that his attorney coerced him into settling his case with Ford, and that McKenzie's claims regarding Berggren's trial preparation concerned tactical decisions that are protected under *Simko v. Blake*, 448 Mich. 648, 532 N.W.2d 842 (1995). This appeal followed.

## II. ANALYSIS

### A. Standard of review

A grant of summary judgment is reviewed de novo. *Therma–Scan, Inc. v. Thermoscan. Inc.*, 295 F.3d 623, 629 (6th Cir.2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Statute of limitations

■ McKenzie filed suit against Berggren on June 11, 2001. Under Michigan law, the statute of limitations for a legal malpractice claim is two years from the "last date of service" or six months from the date of discovery of the action, whichever is later. M.C.L. § 600.5805(6). Berggren correctly points out in his brief that, under Michigan law, "an attorney-client relationship ends, and the last date of service occurs for the purposes of the malpractice statute of limitations, when a client acts in such a way that the essence

of the attorney-client relationship is destroyed."

Although McKenzie stated in his deposition that he considered the attorney-client relationship to have been terminated within a "couple of days" of May 12, 1990, neither he nor Berggren took any affirmative action to sever the relationship. Such an affirmative step is required under Michigan law. *Compare Genrow v. Flynn,* 166 Mich. 564, 131 N.W. 1115, 1116 (1911) (holding that the client's letter to his attorney accusing him of deceit constituted a discharge of service); *and Berry v. Zisman,* 70 Mich.App. 376, 245 N.W.2d 758, 760 (1976) (holding that the attorney-client relationship is terminated by a legal malpractice action); *with Rochlen v. Landau,* No. 232151, 2002 WL 31953824, at *2 (Mich.App. Dec.13, 2002) (unpublished) (rejecting the defendant's argument that the "act of retrieving a file, for purposes of photocopying, was an 'unequivocal termination' of the attorney-client relationship that can be likened to the filing of a legal malpractice action"). The district court therefore properly rejected Berggren's statute-of-limitations defense.

## C. McKenzie's legal malpractice claim

■ Under Michigan Law, a legal malpractice claim has the following four elements: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Coleman v. Gurwin,* 443 Mich. 59, 503 N.W.2d 435, 436–37 (1993) (citations omitted). The district court concluded that McKenzie had failed to show any negligence on the part of Berrgren, which is the second element of McKenzie's prima facie case. It therefore granted summary judgment on behalf of Berggren.

McKenzie argues that his malpractice claim is not barred by his settlement of the underlying action because Berggren coerced him to settle, both by verbally admonishing him to settle and by leaving him no reasonable alternative in light of Berggren's allegedly negligent representation before and during trial. He relies on *Lowman v. Karp,* 190 Mich.App. 448, 476 N.W.2d 428 (1991), for the proposition that a settlement of the underlying action is not an absolute bar to a subsequent legal malpractice claim. The court in *Lowman* held that the legal malpractice claim there at issue was not barred by a prior settlement because the defendant left the plaintiff with no alternative other than to settle her case on unfavorable terms:

> Plaintiff claims that after she informed defendant that she did not want to settle, defendant flatly refused to try the case. The matter arose so close to the trial date that it would have been very difficult, if not impossible, for plaintiff to obtain another attorney. Thus, plaintiff was put in a position where settlement was her only reasonable choice despite her own reservations about the settlement and despite the advice of others.

*Id.* at 431.

McKenzie's case is distinguishable, however, because in *Lowman* the question of whether the settlement agreement was knowingly and voluntarily entered into by the plaintiff had never been litigated. Here that question has been previously litigated in state court, so that McKenzie is collaterally estopped from subsequently claiming that Berggren coerced him to settle. In this respect, the present case is similar to that of *Alterman v. Provizer, Eisenberg, Lichtenstein & Pearlman, P.C.,* 195 Mich.App. 422, 491 N.W.2d 868 (1992). The Michigan Court of Appeals in *Alterman* held that the plaintiff was collaterally estopped from arguing that his attorney

had negligently allowed him to settle a claim while mentally incompetent because a motion to set aside the settlement on the basis of his alleged mental incompetence had previously been rejected by another court. *Id.* 870–71.

McKenzie, although not entirely barred from bringing a legal malpractice action, is collaterally estopped from basing such an action upon allegations of coercion to settle. The district court therefore did not err in granting summary judgment to Berggren on the ground that the alleged negligent representation was essentially based on the settlement.

In addition to dismissing McKenzie's complaint on the basis of collateral estoppel, the district court found that this case was controlled by *Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842 (1995). in which the Michigan Supreme Court held that "tactical decisions do not constitute grounds for a legal malpractice action." *Id.* at 848; *see also Woods v. Gursten,* No. 194523, 1998 WL 1988581, at * 3 (Mich. App. Dec.15, 1998) (holding that "legitimate areas of attorney judgment ... may not be second-guessed"). The plaintiff in *Simko* alleged

> that [his attorney] did not produce any witnesses in his defense besides Mr. Simko himself, failed to produce plaintiff's personal physician who had been treating him for a pinched nerve and who prescribed medication that would have offered an explanation of his medication condition at the time of his arrest, and failed to provide Mr. Simko with the name and location of the hotel where Mr. Simko had spent the day before he was arrested that may have protected him from impeachment.

*Simko,* 532 N.W.2d at 845. Summary disposition in favor of Simko's attorney was upheld by the Michigan Supreme Court on the ground that the attorney was "not answerable for mere errors in judgment." *Id.* at 847.

McKenzie argues that the presence of a factual record distinguishes his case from Simko's. But the Michigan Supreme Court in *Simko* rejected the notion that the presence of a factual record would have affected its decision. *Id.* at 844 (stating that "no amount of factual development could reveal a case of malpractice."). In fact, the dissent in *Simko* criticizes the majority opinion for finding as a matter of fact or law that the defendant's " 'alleged acts and omissions were trial tactics based on good faith and reasonable professional judgment' " even though "the Simkos [had] filed an affidavit of a lawyer stating that in his opinion Blake had erred." *Id.* at 851 (quoting the majority opinion). Although the dissenting opinion may be correct in its assessment that the majority inadvisably rejected the contention that a question of fact can arise as to whether a " 'mere' error of judgment[ ] constitutes negligence." *Id.* at 850 (Levin, J., dissenting), the Michigan Supreme Court's holding is nevertheless binding on this court.

**D. Breach of contract and fiduciary duty claims**

■ The district court found that McKenzie's breach of contract and fiduciary duty claims were duplicative of his legal malpractice claim. Michigan law is clear that a plaintiff cannot prevail on a claim for breach of contract where the alleged facts support a claim for legal malpractice. *Aldred v. O'Hara–Bruce,* 184 Mich.App. 488, 458 N.W.2d 671, 673 (1990) (holding that claims against attorneys for inadequate representation sound in legal malpractice and not breach of contract). The *Aldred* case has also been interpreted by the Michigan courts as holding that the only claim that may be brought against one's attorney for inadequate legal ser-

vices is a claim for legal malpractice. *Melody Farms, Inc. v. Carson Fischer, PLC,* No. 215883, 2001 WL 740575, at *5 (Mich. App. Feb.16, 2001) (unpublished) (holding that, in light of *Aldred,* a claim for breach of fiduciary duty is redundant with a claim for legal malpractice).

### E. Intentional infliction of emotional distress

Under Michigan law, a prima facie claim for intentional infliction of emotional distress has the following four elements: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Ruffin–Steinback v. dePasse,* 267 F.3d 457, 464 (6th Cir.2001) (quotation marks omitted). Michigan law requires that the plaintiff show more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d 905, 909 (1985) (citation and quotation marks omitted). In this case, McKenzie alleges that Berggren "yelled at him and called him crazy, and strong-armed [him] into a settlement by referencing his skin color!" Although this alleged language would indeed be rude and unprofessional, we agree with the district court that McKenzie has failed to allege any conduct that rises to the level of "extreme and outrageous" under Michigan law.

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.