NOT DESIGNATED FOR PUBLICATION

No. 124,400

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

B.E.,
*Appellant*,

v.

BRAD PISTOTNIK, TONY ATTERBURY and BRAD PISTOTNIK LAW, P.A.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed September 23, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*Richard A. Olmstead*, of Kutak Rock LLP, of Wichita, for appellees.

Before GARDNER, P.J., MALONE and CLINE, JJ.

PER CURIAM: B.E. appeals the district court's grant of summary judgment to Brad Pistotnik, Tony Atterbury, and Brad Pistotnik Law, P.A. (collectively Defendants). Defendants previously represented B.E. in a tort claim against G.G. that ended with a mutual release agreement between the parties. B.E. later claimed she never signed the mutual release agreement but thought she was signing a document that would allow Defendants to withdraw as her attorneys. She claimed Defendants attached her signature to a mutual release agreement without her knowledge and consent. G.G. moved to enforce the settlement and the district court held an evidentiary hearing. After hearing sworn testimony, the district court enforced the settlement agreement, finding that B.E.

1

knowingly and voluntarily signed the mutual release agreement, and that Defendants did not obtain her signature through fraud or bad faith. B.E. appealed but this court found the district court's decision was supported by substantial competent evidence.

B.E. brought this action against Defendants alleging that they violated the Kansas Consumer Protection Act (KCPA), committed fraud, acted negligently, and breached their fiduciary duty. In her verified petition, B.E. reasserted her factual contentions that Defendants tricked her into settling the prior lawsuit by attaching her signature to the mutual release agreement without her knowledge or consent. The KCPA claim asserted that Defendants engaged in false advertising that induced her to hire Defendants in the first place. The negligence or legal malpractice claim asserted that Defendants failed to litigate her prior lawsuit within the applicable standard of care because they failed to adequately investigate her claim, take depositions, and retain an expert witness within the deadline. B.E. claimed that if not for Defendants' actions, she would have retained counsel who would have competently handled her case and obtained a judgment for her. Before completion of discovery, the district court granted summary judgment for Defendants on all claims mainly under the doctrine of collateral estoppel. After thoroughly reviewing the record and the parties' arguments on appeal, we affirm the district court's judgment in part but reverse in part and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

*The prior lawsuit and appeal*

The facts of B.E.'s prior lawsuit were summarized by this court in her first appeal. *B.E. v. G.G.*, No. 117,924, 2018 WL 4167678 (Kan. App. 2018) (unpublished opinion). In May 2016, B.E. hired Defendants to represent her in a tort claim against G.G., alleging he transmitted HIV to her. B.E.'s case was handled by Atterbury, a lawyer in the Pistotnik law firm. G.G. filed a counterclaim against B.E. The case seemingly concluded in

2

February 2017 when B.E. signed a mutual release agreement to settle. But B.E. then asserted that she did not wish to settle which led to G.G. moving to enforce the mutual release agreement. 2018 WL 4167678 at *1.

The district court heard arguments on the motion. B.E. asserted that she did not intend to settle, and that she only signed a piece of paper which she believed would allow Atterbury and Pistotnik to withdraw as her attorneys. She claimed that Atterbury later attached the signature page to the mutual release agreement without her knowledge. The district court noted that, although the mutual release was signed by both parties, B.E. was raising a factual defense to its enforcement. The court scheduled the matter for an evidentiary hearing on B.E.'s claims. 2018 WL 4167678 at *2.

B.E. represented herself at the hearing and testified consistent with her previous argument to the court. Atterbury testified that he developed concerns about causation issues in B.E.'s case after some discovery. He explained these issues to B.E. and informed her that he would withdraw as counsel. He offered to help her enter a mutual release agreement before withdrawing if she wanted to do so. Atterbury testified that B.E. met with him and his legal assistant, Barbara Cooper, on February 13, 2017. According to Atterbury, B.E. decided to go through with the mutual release agreement at this meeting. Atterbury testified that he read through the mutual release with B.E. and Cooper notarized her signature. Cooper corroborated Atterbury's testimony. 2018 WL 4167678 at *3.

The district court granted G.G.'s motion to enforce the settlement and dismissed the case with prejudice. The district court found that B.E. voluntarily signed the agreement, and her signature was not obtained through fraud or bad faith. On appeal, this court determined that the district court's factual findings were supported by substantial competent evidence and affirmed the district court's judgment. 2018 WL 4167678 at *5.

3

*The current lawsuit*

On July 20, 2018, B.E. filed the current lawsuit against Defendants. In her verified petition, B.E. claimed she hired Pistotnik and Brad Pistotnik Law, P.A. because of their ubiquitous advertising in the Wichita area. Her petition included several pages describing these advertisements and screenshots of some of the advertisements. B.E. also explained why she believed each advertisement misrepresented the amount recovered in each case. As for the February 13, 2017, meeting with Atterbury, B.E. alleged:

"118. The February 13, 2017 [meeting] took place as scheduled but was 'an hour of confusion' where Defendant Atterbury again urged her to dismiss the case.
"119. Again, Plaintiff told Defendant Atterbury that she was not interested in dismissing the case and she planned to pursue it.
"120. Plaintiff stated she believed that the purpose of the meeting was for 'releasing Tony' and the Defendants from further representing her and she signed what she thought was a form that allowed them to withdraw as her counsel.
"121. The paper that the Plaintiff was asked to sign, and did sign, was not attached to anything and it [Atterbury] represented to her that it was simply a form authorizing the Defendants to withdraw.
"122. Unbeknownst to the Plaintiff, the form that she signed would be attached to the Release that [G.G.'s] attorney had sent to Defendant Atterbury after he had verbally agreed to dismiss the Plaintiff's case."

After setting forth the factual assertions, B.E.'s petition brought four claims against Defendants—violations of the KCPA, fraud, negligence, and breach of fiduciary duty. The KCPA claim alleged Defendants engaged in false and misleading advertising. She asserted Defendants inflated the amount of money they recovered for clients in their advertisements. B.E. asserted the advertisements duped her into hiring Defendants and had she not done so, it was "virtually certain that she would have retained counsel that would have competently handled her case and she would have obtained a judgment in her favor instead of having her counsel verbally agree to dismiss it without her approval."

4

The fraud claims also stemmed from Defendants' alleged false advertisement. B.E. also alleged that Defendants committed fraud by concealing the fact that they had retained no expert witnesses to support her claim by the expert disclosure deadline. And she alleged that Defendants fraudulently induced her to dismiss her claims by settling without her knowledge or consent. She claimed they settled to conceal the negligent way in which they handled her case.

For her negligence claims, B.E. alleged that Defendants failed to litigate her case within the applicable standard of care. She cited Defendants' failure to adequately investigate her claim, take depositions, search for and hire an expert witness, deciding that they would no longer litigate her claim only after the expert deadline had passed, entering into a verbal settlement agreement without her consent, and failing to provide her case file to new counsel. B.E. did not elaborate on her claim for breach of fiduciary duty beyond stating that the breach was shown by the facts set forth in her petition.

Defendants moved to dismiss based on the pleadings, asserting that B.E.'s claims were barred by collateral estoppel because she could not prove damages based on the district court's findings about how the prior case settled. After hearing arguments of counsel, Judge David Dahl granted the motion to dismiss the KCPA claims against Atterbury because the pleadings did not sufficiently allege that he engaged in misleading advertising. Judge Dahl otherwise denied the motion, finding it would be "premature to dismiss the case at this point." But Judge Dahl observed that dismissal may be proper "after the close of discovery." Judge Dahl also commented that based on his review of the pleadings, collateral estoppel may not be "applicable" because the parties were not the same and it appeared that different claims were being made in the two lawsuits.

At some point, the case was administratively reassigned from Judge Dahl to Judge Deborah Hernandez Mitchell, and then to Judge William Woolley. B.E. objected to the

5

case being reassigned and asked for it to be returned to Judge Dahl, but Judge Woolley denied her motion for reassignment.

The case proceeded to discovery and B.E. provided a sworn deposition. As in the prior case, B.E. testified that Atterbury tricked her into signing the mutual release agreement without her knowledge and consent. She testified: "I did sign a piece of paper, but I thought that Mr. Atterbury was taking himself away from being my lawyer. I never agreed to sign a piece of paper saying that I was going to let [G.G.] off of suing him." B.E. never testified that she understood she was signing a mutual release agreement but did so based on fraudulent and incompetent advice from her attorney.

On July 14, 2021, Defendants moved for summary judgment and again raised the collateral estoppel defense to all the claims. When Defendants filed this motion, the deadline for B.E. to designate expert witnesses was still a few weeks away on August 13, 2021. The discovery deadline was November 19, 2021. The district court later extended the deadline for B.E. to designate expert witnesses to November 12, 2021, and the discovery deadline was extended to March 18, 2022.

Defendants' statement of uncontroverted facts reviewed the history of the prior case including B.E.'s assertion that Atterbury tricked her into signing the mutual release agreement. Defendants asserted that B.E. insisted in the prior case "that she did not know she was signing a release, but rather believed she was signing a document to allow Atterbury to withdraw from the case." B.E. did not controvert this fact. Defendants again argued that B.E.'s claims were barred by collateral estoppel because she could not prove damages based on the district court's findings about how the prior case settled.

Despite her repeated assertions that she did not know she was signing a release agreement, B.E. argued in her response to the motion for summary judgment that she "did not simply up and decide to settle her underlying claims with G.G. Instead, her decision

6

was based on legal advice and counsel provided to her by the Defendants." So instead of arguing that she thought she was signing something that would allow Defendants to withdraw from her case, B.E. argued that she understood she was signing a mutual release agreement, but only signed it because Defendants negligently advised her to do so.

In reply, Defendants stated that B.E. was portraying the facts "as she wishes they were, not the facts as they are." They noted that B.E. had repeatedly testified that she did not intend to settle the prior lawsuit and did not rely on any advice from Defendants in settling the prior lawsuit. Defendants asserted that B.E. "believed *and still believes* that when she signed the settlement agreement and release she was merely signing a document to allow Defendants to withdraw from the underlying litigation."

On September 14, 2021, the district court filed a memorandum decision granting summary judgment for Defendants on all claims. The district court found the facts were essentially uncontroverted, and B.E.'s claim that Atterbury tricked her into signing the mutual release agreement was decided against her in the prior lawsuit. The district court recognized B.E.'s legal malpractice claim against Defendants was not litigated in the prior lawsuit, but the court found it immaterial because "whether she did or did not raise the issue is not the test." Instead, the district court found that "[t]he test is whether she had the opportunity to litigate [the] issue of her attorneys' malpractice in an attempt to prevent the mutual release settlement agreement from being enforced." The district court found collateral estoppel applied even though the parties in the two lawsuits were not the same. The district court denied the KCPA claims because B.E. could not show she was an aggrieved party. B.E. timely appealed the district court's judgment.

### DID THE DISTRICT COURT ERR IN FINDING COLLATERAL ESTOPPEL PRECLUDES B.E. FROM RECOVERING DAMAGES?

B.E. claims the district court erred by granting summary judgment for Defendants based on collateral estoppel. She argues that none of the three elements of collateral estoppel is met in this case. B.E. also argues that Judge Woolley erred by not following the law-of-the-case doctrine. As to the KCPA claims, B.E. argues that she qualified for damages as an aggrieved party because of Defendants' false advertising. She also argues that the district court erred by dismissing the KCPA claims against Atterbury.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

This case also involves application of collateral estoppel. Whether the doctrine of collateral estoppel applies is a question of law subject to de novo review. *In re Care & Treatment of Sigler*, 310 Kan. 688, 698-99, 448 P.3d 368 (2019).

As an overview, we find the parties' arguments to the district court on the summary judgment motion were presented in a confusing manner. The prior lawsuit focused on the factual disputes between B.E. and Defendants about how the mutual release agreement was signed and how the district court resolved those disputes. The

same factual disputes were reasserted in the current lawsuit and permeate all the legal theories under which B.E. seeks to recover damages. Defendants' summary judgment motion focused on these same issues and argued that all claims asserted by B.E. were barred by collateral estoppel. The district court granted summary judgment on all claims.

On appeal, B.E. raises many separate issues and argues the district court erred in applying collateral estoppel, in granting summary judgment on the negligence and KCPA claims, and in not following the law-of-the-case doctrine. To resolve whether the district court erred in granting summary judgment, we will reorganize the arguments into three broad issues. First, did the district court err in finding collateral estoppel barred B.E.'s claims arising from how the mutual release agreement was signed? Second, did the district court err in granting summary judgment on B.E.'s negligence claims? Third, did the district court err in granting summary judgment on B.E.'s KCPA claims?

*Did the district court err in finding collateral estoppel barred B.E.'s claims arising from how the mutual release agreement was signed?*

Before proceeding, it is important to define exactly what B.E.'s current claims are so they can be analyzed. When she was before the district court in the prior lawsuit, B.E. testified that she thought she was signing something that would allow Defendants to withdraw from the case. She claimed Defendants attached the signature sheet to the mutual release agreement without her knowledge and consent.

B.E. began this case under the same factual premise. B.E.'s verified petition alleged that Atterbury represented to her that the document she was signing "was simply a form authorizing the Defendants to withdraw." The petition alleged that "[u]nbeknownst to the Plaintiff, the form that she signed would be attached to the Release that [G.G.'s] attorney had sent to Defendant Atterbury after he had verbally agreed to dismiss the Plaintiff's case." B.E.'s sworn deposition testimony was consistent: "I did

9

sign a piece of paper, but I thought that Mr. Atterbury was taking himself away from being my lawyer. I never agreed to sign a piece of paper saying that I was going to let [G.G.] off of suing him."

But in opposition to the motion for summary judgment B.E. argued in her brief that she knew what she was signing but did so based on fraudulent and incompetent advice of counsel. She states in her brief on appeal that she chose to settle because Defendants' "negligent failure to properly litigate [her] claims" left her no other option.

The problem with this strategy is that B.E.'s legal arguments in the summary judgment pleadings and on appeal are contrary to her own testimony. B.E. cannot advance a legal argument to avoid the application of collateral estoppel that is contradicted by her own testimony. B.E.'s factual assertions about how her signature was obtained on the mutual release agreement have been clear and consistent:  she was tricked into signing the release agreement because she thought she was signing a document that would allow Atterbury to withdraw as her attorney, but he attached her signature to the agreement without her knowledge and consent. These factual assertions were resolved against B.E. in the prior lawsuit following an evidentiary hearing. The legal question before the court is whether B.E.'s current lawsuit against Defendants—to the extent that it is based on the same factual assertions—is barred by the doctrine of collateral estoppel.

*Collateral estoppel analysis*

Collateral estoppel, also called issue preclusion, "prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action." *In re Application of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012). Collateral estoppel applies when (1) a court has rendered a prior judgment on the merits that determined the rights and liabilities of the parties on the issue based on ultimate facts as disclosed by the pleadings and judgment, (2) the parties are the same or in privity, and (3)

10

the issue litigated has been determined and is necessary to support the judgment. *In re Care & Treatment of Easterberg*, 309 Kan. 490, 502, 437 P.3d 964 (2019).

Collateral estoppel "binds a party to a factual determination made in a case as an integral part of a judgment when the same issue comes up in a successive suit involving the same litigants." *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 265, 261 P.3d 943 (2011). The doctrine promotes judicial efficiency and fairness to the parties. "Collateral estoppel essentially recognizes that once a court has determined a material factual issue, a party may not secure a new determination contrary to that finding in later litigation." 46 Kan. App. 2d at 266. We will address the elements of collateral estoppel, focusing on whether the second element—mutuality of the parties—is met here.

*Was there a prior judgment on the merits that determined the parties' rights and liabilities on the issue?*

The district court entered a final judgment in the prior lawsuit—dismissal with prejudice—based on the parties' mutual settlement agreement. B.E. argues there was not a final judgment on the merits because the prior case was disposed of by settlement and not by trial or summary judgment. But Kansas courts have rejected B.E.'s position. "A voluntary dismissal of a case with prejudice, based on a settlement agreement that is approved by the court and journalized, is a final judgment on the merits." *Honeycutt v. City of Wichita*, 251 Kan. 451, 458, 836 P.2d 1128 (1992); see also *Ford-Clifton v. Department of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) (citing cases from several jurisdictions and noting that "[i]t is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits").

Here, B.E. contested the mutual release agreement between the parties in the prior lawsuit, leading to an evidentiary hearing. After hearing the evidence, the district court entered a judgment on the merits that determined the rights and liabilities of the parties

11

on the disputed issue. The case was then dismissed with prejudice. That judgment was reviewed on the merits and upheld by this court on appeal. These facts satisfy the first element of collateral estoppel.

*Was the issue litigated and necessary to support the judgment?*

Another element of collateral estoppel is that the issue must have been litigated and necessary to support the judgment. In the prior lawsuit, B.E. argued that the mutual release agreement should not be enforced because she never signed the release but signed some other document, and that her signature was then fraudulently attached to the settlement agreement by her attorney. The district court held an evidentiary hearing and evidence was presented on the issue. After hearing the evidence, the district court found that B.E. voluntarily entered the settlement agreement and Defendants did not engage in fraud or bad faith. This finding was integral to deciding whether to grant G.G.'s motion to enforce the settlement. These facts satisfy the second element of collateral estoppel.

A related issue is whether B.E. had a full and fair opportunity to litigate the issue. Because collateral estoppel is an equitable doctrine and guided by principles of fairness, a party must have a full and fair opportunity to litigate an issue before collateral estoppel can apply. Though not explicitly listed as a separate element of collateral estoppel, Kansas courts have declined to adopt the doctrine where the underlying proceeding did not provide a full and fair opportunity to litigate an issue. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 459, 980 P.2d 1022 (1999) (declining to apply collateral estoppel "because the disparity between the quality and extensiveness of the criminal and administrative procedures justifies an exception to the rule of collateral estoppel").

B.E. had a full and fair opportunity to litigate the issue of whether she knew she was signing a mutual release agreement. The district court heard her argument in the prior lawsuit and granted B.E. an evidentiary hearing. She was also afforded time to seek

new counsel, although she did not receive as much time as she wanted. At the evidentiary hearing, B.E. had a chance to examine the other two people who were present when she signed the mutual release agreement, and she also testified about her own version of the events. Given that the factual question was fairly limited in scope—did B.E. know what she was signing on February 13, 2017—B.E. had a fair chance to litigate the issue, and applying collateral estoppel in this situation does not offend due process.

*Are the parties the same or in privity?*

The parties in the prior lawsuit, B.E. and G.G., are not the same parties here. Thus, the question is whether Defendants are in privity with G.G. for applying collateral estoppel. We view this as the most difficult question in the analysis.

"As with the doctrine to which it is a part, privity is an equitable determination grounded in principles of fundamental fairness and sound public policy." *Cain v. Jacox*, 302 Kan. 431, 437, 354 P.3d 1196 (2015). The term "privity" does not have a "generally prevailing definition . . . which can be automatically applied to all cases." 302 Kan. 431, Syl. ¶ 4; *St. Paul Fire and Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 18, 974 P.2d 611 (1999) ("We have read a number of cases attempting to define privity and can only conclude that the definition of privity is one of the more difficult to state and is perhaps one that has never been satisfactorily set forth."). Determining whether parties are in privity "requires careful examination of the circumstances of each case as it arises." *Cain*, 302 Kan. 431, Syl. ¶ 4. Our Supreme Court has referred to the decision of whether a party is in privity with another as a policy decision. *Huelsman*, 267 Kan. at 458.

For privity to be invoked, "there must be a showing that 'the parties in the two actions are really and substantially in interest the same.'" *Cain*, 302 Kan. at 437. "'Privity is not established however, from the mere fact that persons happen to be interested in the same question or in proving or disproving the same state of facts, or because the question

litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action.'" *St. Paul*, 26 Kan. App. 2d at 18 (quoting 47 Am. Jur. 2d, Judgments § 663 [now 46 Am. Jur. 2d, Judgments § 567]).

Under the unique facts of this case, we consider Defendants and G.G. to be in privity for the purpose of collateral estoppel on the narrow factual dispute that is the center of the two lawsuits. The two parties share an interest on the disputed issue that is "'really and substantially'" the same. *Cain*, 302 Kan. at 437. In fact, when the district court in the prior lawsuit heard B.E.'s arguments opposing the settlement agreement and ordered an evidentiary hearing, the court observed that B.E.'s real beef lay with Pistotnik and Atterbury, not with G.G. G.G. did not even testify at the evidentiary hearing, as the dispute on how B.E. signed the settlement agreement was between B.E. and Atterbury.

Alternatively, even if Defendants and G.G. are not in privity for the purpose of collateral estoppel, the doctrine could still be applied under a rationale that other courts often refer to as defensive nonmutual collateral estoppel. The district court cited *McKenzie v. Berggren*, 99 Fed. Appx. 616 (6th Cir. 2004) (unpublished opinion), for the proposition that the privity rule is sometimes loosely applied. *McKenzie* has similar facts. Kurt Berggren represented Fenton McKenzie in an employment discrimination action that ended in a settlement agreement. McKenzie later tried to renounce his settlement agreement because "Berggren coerced him to settle, both by verbally admonishing him to settle and by leaving him no reasonable alternative in light of Berggren's allegedly negligent representation before and during trial." 99 Fed. Appx. at 619. Following an evidentiary hearing, a Michigan state court found that McKenzie knowingly and voluntarily entered the settlement agreement. McKenzie then sued Berggren alleging Berggren's negligent representation forced him to settle his case. The district court granted summary judgment to Berggren after finding that collateral estoppel barred McKenzie from relitigating the factual claim that Berggren coerced him into settling.

14

The Sixth Circuit held with minimal discussion that McKenzie was collaterally estopped from claiming that Berggren coerced him to settle because the question had been litigated. 99 Fed. Appx. at 619. The *McKenzie* decision does not mention privity, but the court cited *Alterman v. Provizer, Eisenberg, Lichtenstein & Pearlman, P.C.*, 195 Mich. App. 422, 491 N.W.2d 868 (1992), that provides more reasoning.

In *Alterman*, the Michigan Court of Appeals discussed privity and how it applies in legal malpractice suits. After suffering an injury at work, Allen Alterman hired the defendant attorneys to represent him. Alterman settled on the advice of his attorneys. Several months later, and represented by other counsel, Alterman moved to have the settlement set aside because he was not mentally competent when he entered it. Alterman's request was denied following an evidentiary hearing. Alterman later filed another suit alleging that his attorneys committed malpractice by allowing him to settle his case when he was mentally incompetent. The district court ruled that the suit was barred by collateral estoppel. Alterman appealed.

The Michigan Court of Appeals affirmed. While the court did not abandon the privity requirement, it found that it was relaxed in the context of a legal malpractice action arising out of a civil case. 195 Mich. App. at 424-25. The court found that because the other two elements of collateral estoppel were met, Alterman was "collaterally estopped from relitigating the issue, even though the parties are not identical, no mutuality exists, and no traditional exceptions apply." 195 Mich. App. at 427.

What the Michigan Court of Appeals allowed is often called defensive nonmutual collateral estoppel. States that permit defensive nonmutual collateral estoppel only require the party against whom collateral estoppel is applied to be the same as or in privity with a party from the prior litigation. Other states permit defensive nonmutual collateral estoppel in attorney misfeasance cases like B.E.'s case. E.g., *Barrow v. Pritchard*, 235 Mich. App. 478, 485, 597 N.W.2d 853 (1999) ("[M]utuality of estoppel is

15

not necessary before a defendant in a legal malpractice action can use the defense of collateral estoppel."); *Irby v. Richardson*, 278 S.C. 484, 487, 298 S.E.2d 452 (1982) ("Where the plaintiff has had a full and fair opportunity to litigate the question of an attorney's negligence or effectiveness in a particular case, he should be collaterally estopped to adjudicate the same issue in a subsequent legal malpractice action.").

The Kansas Supreme Court has issued conflicting decisions on mutuality, i.e., whether parties must be the same or in privity to apply collateral estoppel. It has issued no recent decisions on the subject. In *Goetz v. Board of Trustees*, 203 Kan. 340, 349-50, 454 P.2d 481 (1969), the court stated in dicta that "collateral estoppel does not require mutuality of parties." But in later cases that do not mention *Goetz*, the court has said that mutuality is required. E.g., *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1999) ("Plaintiffs ask us to abandon 'mutuality of parties' requirement for collateral estoppel which we are not prepared to do."); *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 670, 941 P.2d 1321 (1997) ("Those defendants who were not parties to the [prior] litigation would not, under any circumstances, be allowed the benefit of collateral estoppel unless we abandon the mutuality of the parties requirement. This, we decline to do."); *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 473-74, 712 P.2d 1199 (1986) (noting most courts require mutuality and abandonment of the rule would not be fair).

This disparity has been recognized by federal courts. See *Jetcraft Corp. v. FlightSafety International, Inc.*, 781 F. Supp. 687, 692-93 (D. Kan. 1991) ("The suggestion in *Goetz* that collateral estoppel does not require mutuality of parties has found no further support in the rulings of Kansas courts."); *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1164 (D. Kan. 2018) (reaffirming statement in *Jetcraft*).

At first glance, the Kansas Supreme Court seems to require mutuality before collateral estoppel can been applied. But Kansas courts recognize a difference between

offensive and defensive use of collateral estoppel. "Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has already litigated and lost against another defendant." *McDermott*, 238 Kan. 462, Syl. ¶ 5. In contrast, when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has litigated unsuccessfully, it is called offensive collateral estoppel. 238 Kan. 462, Syl. ¶ 4. A closer look at Kansas Supreme Court decisions shows that the court has never ruled that nonmutual defensive use of collateral estoppel is prohibited when it would serve the purposes of the collateral estoppel doctrine. See, e.g., *Reimer*, 262 Kan. at 670 (required mutuality of parties in case applying defensive use of collateral estoppel when purposes of collateral estoppel doctrine would not be served); *McDermott*, 238 Kan. 473-74 (required mutuality of parties in case applying *offensive* use of collateral estoppel); *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 508-13, 665 P.2d 757 (1983) (allowed defensive use of collateral estoppel in cross-claim between defendants in comparative negligence case); *Adamson v. Hill*, 202 Kan. 482, 487, 449 P.2d 536 (1969) (required mutuality of parties in case applying *offensive* use of collateral estoppel).

Under the circumstances of this case, it would be fair to allow collateral estoppel as a defense to B.E.'s claim that Defendants attached her signature to the mutual release agreement without her knowledge. The Kansas Supreme Court has recognized that collateral estoppel has been applied more often as a shield than a sword, and the reasons why are exemplified in this case. B.E. already had a chance to litigate this issue. Though Defendants were not parties to the prior lawsuit, their interests were represented through the witnesses who testified at the hearing on G.G.'s motion to enforce the settlement agreement, and Defendants adopt the same position now as they did in the prior lawsuit. We thus conclude, consistent with cases from other states with facts like this one, that nonmutual defensive use of collateral estoppel can relax the mutuality requirement when it would otherwise serve the purposes of the collateral estoppel doctrine.

To sum up the collateral estoppel analysis, we conclude the district court did not err in finding collateral estoppel barred B.E.'s claims arising from how the mutual release agreement was signed. B.E.'s factual assertions are clear and consistent: she was tricked into signing the mutual release agreement because she thought she was signing a document that would allow Atterbury to withdraw as her attorney, but he attached her signature to the mutual release agreement without her knowledge or consent. These factual assertions were resolved against B.E. in the prior lawsuit following an evidentiary hearing. All three elements of collateral estoppel are met and bar B.E. from recovering damages against Defendants based on the same claims under any legal theory of liability.

*Did the district court err in not following the law-of-the-case doctrine?*

B.E. makes an alternative argument that the district court should have followed the law-of-the-case doctrine and adopted Judge Dahl's findings on collateral estoppel. The law-of-the-case doctrine is "a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so." *State v. Collier*, 263 Kan. 629, Syl. ¶ 2, 952 P.2d 1326 (1998). "Ordinarily, under the law of the case doctrine, once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice." 263 Kan. 629, Syl. ¶ 3. B.E. candidly admits that failure to abide by the law-of-the-case doctrine does not warrant reversal.

The law-of-the-case doctrine does not apply here. Judge Dahl ruled on a motion to dismiss based on the pleadings while Judge Woolley ruled on a summary judgment motion. These are two different motions reviewed under different legal standards. Plus, Judge Dahl simply ruled it was premature to dismiss the case based on the pleadings, and he even recognized that dismissal may be proper after completion of discovery. The district court did not err in not following the law-of-the-case doctrine.

18

*Did the district court err in granting summary judgment on B.E.'s negligence claims?*

Although the district court did not err in finding that collateral estoppel barred B.E.'s claims arising from how the mutual release agreement was signed, this does not mean that the district court correctly granted summary judgment on B.E.'s negligence claims. B.E.'s petition alleged Defendants failed to litigate her prior lawsuit within the applicable standard of care because they failed to adequately investigate her claim, take depositions, and retain an expert witness within the deadline. B.E. claimed that if not for Defendants' actions, she would have retained counsel who would have competently handled her case and obtained a judgment for her. Defendants denied these claims.

In its decision granting summary judgment, the district court recognized that B.E.'s legal malpractice claim was not litigated in the prior lawsuit, but the court found it immaterial because "whether she did or did not raise the issue is not the test." Instead, the district court found that "[t]he test is whether she had the opportunity to litigate [the] issue of her attorneys' malpractice in an attempt to prevent the mutual release settlement agreement from being enforced." This finding was a clear error of law.

An issue must be litigated for collateral estoppel to apply. *In re Care & Treatment of Easterberg*, 309 Kan. at 503. If a certain fact question is not litigated, then it cannot be necessary to support the judgment which is a prerequisite to applying collateral estoppel. *Estate of Belden*, 46 Kan. App. 2d at 265-66. The district court likely confused the elements of collateral estoppel with those of res judicata. Res judicata applies to bar successive lawsuits when four elements are met:  (1) same claims; (2) same parties; (3) claims were *or could have been* raised; and (4) final judgment on the merits. *Cain*, 302 Kan. at 434. Defendants admit in their appellate brief that the district court erred by conflating the elements of collateral estoppel with the elements of res judicata, although Defendants argue the error was harmless. We disagree.

"In order to prevail on a claim of legal malpractice, a plaintiff is required to show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage. Additionally, to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error." *Canaan v. Bartee*, 276 Kan. 116, Syl. ¶ 1, 72 P.3d 911 (2003).

Generally, expert testimony is required to establish the appropriate standard of care and causation in a legal malpractice claim because such matters are outside the knowledge of the average person. *Singh v. Krueger*, 39 Kan. App. 2d 637, 640, 183 P.3d 1 (2008). For B.E. to prevail on her legal malpractice claim, she will need to present a qualified expert witness to testify that Defendants failed to litigate her prior lawsuit within the applicable standard of care and that their deficient performance caused her injury. B.E. will also need to establish the validity of her claim in her prior lawsuit by showing that it would have led to a favorable judgment had it not been for Defendants' error. These are heavy burdens. B.E. presented no evidence in the summary judgment pleadings to establish a disputed material fact on any of these claims.

But the problem here is that Defendants' summary judgment motion was premature to dispose of B.E.'s negligence claims. When Defendants moved for summary judgment, the deadline for B.E. to designate expert witnesses was still a few weeks away. In fact, the last order the district court entered before it granted Defendants' motion for summary judgment on September 14, 2021, was to extend the deadline for B.E. to designate expert witnesses to November 12, 2021, and the discovery deadline was extended to March 18, 2022.

The district court granted summary judgment on B.E.'s negligence claims, reasoning that B.E. "had the opportunity to litigate [the] issue" in her attempt to prevent the mutual release agreement from being enforced. As we stated, this finding was an error

20

of law. On appeal, Defendants argue that the district court properly granted summary judgment because B.E.'s voluntary dismissal of her claims in the prior lawsuit was the sole cause of the injuries she alleges Defendants caused her. Defendants argue that B.E.'s claims are barred by collateral estoppel because she cannot prove damages based on the district court's findings about how the prior case settled. But this is simply not the case.

B.E. asserts negligence claims against Defendants on several grounds that are separate and distinct from the dispute about how the mutual release agreement was signed. For instance, B.E. alleged Defendants failed to adequately investigate her claim, failed to take necessary depositions, and failed to search for and retain an expert witness within the deadline. The district court in the prior lawsuit made no findings on any of these factual assertions in resolving the dispute over how the settlement agreement was signed. Stated another way, the lawyers' degree of skill in handling the matter was not litigated in B.E.'s prior case.

Moreover, the fact that B.E. voluntarily settled her prior lawsuit—as the district court found—does not bar B.E. from bringing a legal malpractice claim against her attorneys for their alleged negligence in litigating the prior case. See *Canaan*, 276 Kan. 116, Syl. ¶ 1 (setting forth elements of legal malpractice claim); *Kahn v. Morse & Mowbray*, 121 Nev. 464, 476, 117 P.3d 227 (2005) (holding collateral estoppel did not bar client from suing attorney after settling prior case because legal malpractice claim was not litigated in prior case). Defendants admit in their appellate brief that most jurisdictions recognize that settlement of the prior case is not an absolute bar to a legal malpractice claim. Defendants assert this general rule does not apply to B.E.'s claims but offer no persuasive reasons to reach this conclusion, especially given the fact that the district court granted summary judgment before the deadline for B.E. to come forward with evidence to support her claims.

For these reasons, the district court erred in granting summary judgment on B.E.'s negligence claims. As we stated earlier in this opinion, B.E.'s negligence claims cannot stem from allegations about how the mutual release agreement was signed—those claims are barred by collateral estoppel. But B.E. must be given the chance to present evidence on her claims that Defendants failed to litigate her prior lawsuit within the applicable standard of care. The case is remanded with directions for the district court to set new deadlines for the parties to designate expert witnesses and to complete discovery. We are not finding that the district court cannot ultimately grant summary judgment for Defendants on B.E.'s negligence claims. But the district court prematurely granted summary judgment on the negligence claims before the completion of discovery.

*Did the district court err in granting summary judgment on B.E.'s KCPA claims?*

B.E. also contends the district court erred in granting summary judgment on her KCPA claims. In the summary judgment motion, Defendants argued that B.E. could not show she was an "aggrieved" party to bring an action under the KCPA. B.E. argued that she became aggrieved the moment she hired Defendants because she was denied the opportunity to seek better counsel that would have competently handled her case. The district court rejected this argument, finding that B.E. could not become aggrieved until Defendants rendered defective service. The district court then found that B.E. "had the opportunity to raise the effectiveness of Defendants representation at the trial level." The district court found that "[b]ecause of the settlement and enforcement litigation, [B.E.] no longer has a legal injury for which relief can be granted under the KCPA."

The KCPA defines several key terms. A "'[c]onsumer'" is "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 2021 Supp. 50-624(b). A "'[c]onsumer transaction'" is "a sale, lease, assignment or other disposition for value of property or services within this state, except insurance contracts

22

regulated under state law, to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. 2021 Supp. 50-624(c). And a "'[s]upplier'" is "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." K.S.A. 2021 Supp. 50-624(l). The KCPA lists many deceptive acts and practices. K.S.A. 2021 Supp. 50-626. B.E. alleged that Defendants engaged in deceptive conduct by advertising large verdicts that did not accurately represent the amount collected for clients.

"[A] consumer aggrieved by an alleged violation of [the KCPA]" can bring an action for declaratory judgment or injunction. K.S.A. 50-634(a). Aggrieved consumers may also recover damages or a civil penalty up to $10,000, whichever is greater. K.S.A. 50-634(b); K.S.A. 50-636(a). Defendants do not challenge whether B.E. is a consumer, whether they are suppliers, or whether a deceptive act or practice occurred. The sole basis for their summary judgment motion was that B.E. was not "aggrieved" and thus could not bring a claim under the KCPA.

Simply establishing a violation of the KCPA does not mean a consumer may recover under the Act. The consumer must show that he or she has been "'aggrieved by'" the violation. *Finstad v. Washburn University*, 252 Kan. 465, 471, 845 P.2d 685 (1993). The KCPA does not define the term "aggrieved." When first asked to interpret the term, the Kansas Supreme Court looked to Black's Law Dictionary which defined it as "'[h]aving suffered loss or injury.' Black's Law Dictionary 65 (6th ed. 1990)." *Finstad*, 252 Kan. at 471-72. An aggrieved consumer must be both aware of and damaged by a violation of the KCPA to maintain an actionable claim. 252 Kan. at 473.

23

B.E. argued in district court that she was aggrieved because she

"was duped into hiring the Defendants to be her counsel based on false advertising and, but for those false advertisements, she would not have hired the Defendants to be her counsel and had she not hired them, it is virtually certain that she would have retained counsel that would have competently handled her case and she would have obtained a judgment in her favor instead of having her counsel verbally agree to dismiss it without her approval."

B.E. is collaterally estopped from arguing that she was aggrieved because her counsel verbally agreed to dismiss the prior lawsuit without her approval. The district court has already decided that B.E. knowingly signed the mutual release and that she did not sign it because of bad faith or fraud on behalf of Defendants. As for the rest of her claims, B.E. asserts that she became aggrieved the moment she hired Defendants. The question is whether a consumer's decision to hire a supplier because of that supplier's deceptive practice renders the consumer aggrieved, or whether there must be other harm.

The district court wrote a persuasive opinion about why adopting B.E.'s interpretation of the term "aggrieved" would lead to unreasonable results. If a supplier made a misrepresentation about the quality of its services, but then provided the services as represented, then a consumer would not be damaged. It is not reasonable for a consumer to complain that she is damaged because she could "have retained counsel that would have competently handled her case" if not for a supplier's deceptive advertisement when in fact a case is competently handled. A consumer is not denied the opportunity to select a competent attorney if the consumer receives a competent attorney. Adopting B.E.'s interpretation of the statute would mean that anyone who hired Defendants based on their advertisements could sue Defendants provided they were within the statute of limitations, even if Defendants provided the best possible service.

24

Thus, we agree with the district court's reasoning that a consumer's decision to hire a supplier because of the supplier's deceptive practice, i.e., false advertising, is insufficient to render the consumer aggrieved—there must be other harm. But at this point, the district court's legal analysis went off track. In deciding that B.E. could not prove other harm, the district court again found that B.E. "*had the opportunity* to raise the effectiveness of Defendants representation at the trial level." (Emphasis added.) As we stated before, an issue must be litigated for collateral estoppel to apply; it is insufficient to find that a party could have raised the issue. *In re Care & Treatment of Easterberg*, 309 Kan. at 503. B.E.'s legal malpractice claim was not litigated in the prior lawsuit.

The district court's dismissal of B.E.'s KCPA claims was premature for the same reason the dismissal of her negligence claims was premature. The deadline for B.E. to designate expert witnesses to support her legal malpractice claims and to complete discovery had not expired when the district court granted summary judgment. The case must be remanded to determine whether B.E. can present evidence of legal malpractice sufficient to survive summary judgment. If so, B.E. will have established a prima facie case of the other harm necessary for her to be an aggrieved party under the KCPA. But if B.E. is unable to establish a legal malpractice claim against Defendants, then Defendants can again challenge whether she is an aggrieved party under the KCPA.

*Did the district court err by dismissing the KCPA claims against Atterbury?*

B.E.'s final argument is that the district court erred by dismissing the KCPA claims against Atterbury. Judge Dahl dismissed the KCPA claims against Atterbury after finding that B.E.'s petition only included KCPA claims against Pistotnik and Brad Pistotnik Law. Defendants argue that the district court did not err by dismissing the KCPA claims against Atterbury because a "false advertisement claim cannot lie against one who never advertised." Whether a district court erred by granting a motion to dismiss

25

for failure to state a claim is a question of law subject to unlimited review. *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019).

Analyzing this claim requires examining the petition to determine whether B.E. stated a claim against Atterbury for violating the KCPA. B.E. alleged that before hiring Defendants, she had been a Wichita resident for over 20 years and "regularly saw advertisements for legal services featuring Brad Pistotnik." One section of her petition was dedicated to dissecting various claims made in these advertisements. She identified six advertised cases in which Pistotnik claimed gross recoveries ranging from $1,100,000 to $9,000,000 and explained why she thought they were misleading. She specified that the ads pertaining to these six cases were run by Pistotnik and Brad Pistotnik Law, P.A. She did not mention Atterbury at all in discussing these six cases. This discussion spans 38 paragraphs of the petition. Following this discussion, B.E. stated:

> "58.     Other advertisements ran by the Defendants featured other claims involving similar literally false 'gross recoveries' via alleged verdicts include ones for $845,000, and $401,000.00.
>
> "59.     Other advertisements ran by the Defendants featured other claims involving literally false settlements include one for $1,600,000 allegedly obtained in connection with a 'River diving accident' and another for $6,000,000 allegedly obtained for a client in a 'crane accident.'"

B.E.'s petition continued and claimed that "Defendants Bradley A. Pistotnik, and Brad Pistotnik Law, P.A. used different actors in ads to advertise the same false verdicts and settlements identified above, thus creating the false and misleading impression that the same verdict or settlement had been obtained for multiple, different clients." The petition also claimed that Pistotnik and Brad Pistotnik Law, P.A. spent over $1,000,000 annually "to produce and disseminate false advertising in order to create in the public's mind the image that he had obtained large, multi-million dollar verdicts and settlements and thus retain him as their own counsel."

26

The next section of B.E.'s petition was titled "Plaintiff Decides to Hire Defendant[s] Brad Pistotnik and Brad Pistotnik Law, P.A." B.E. claimed her first choice of counsel was Pistotnik because, after seeing his advertisements, she believed he had "'the secret' to obtaining such large amounts for clients." Based on this belief, she "retained Defendants Brad Pistotnik Law, P.A. and Brad Pistotnik." B.E.'s KCPA claims stemmed from the advertisements identified in her petition. She claimed she "was duped into hiring the Defendants to be her counsel based on false advertising."

B.E. claims that she did allege that Atterbury engaged in conduct that violated the KCPA because she referred to Defendants collectively in paragraphs 58 and 59 of her petition. She argues that, where warranted, she referred to defendants specifically and, where warranted, she "alleged that all Defendants—including Atterbury—engaged in conduct that violated the KCPA, for example in paragraphs 58 and 59." This argument is unpersuasive when reading B.E.'s petition as a whole.

Based on B.E.'s assertions in her petition, we conclude that she failed to state a claim against Atterbury for violating the KCPA. B.E. asserted the advertisements featured Pistotnik, not Atterbury, and that Pistotnik, not Atterbury, was the attorney claiming to have won the large recoveries. She specified that only Pistotnik and Brad Pistotnik Law, P.A. ran the advertisements and that only Pistotnik and Brad Pistotnik Law, P.A. hired the actors for the advertisements. She specified that her "first choice as counsel was Brad Pistotnik" and that she "retained Defendants Brad Pistotnik Law, P.A. and Brad Pistotnik." Atterbury was not assigned to B.E.'s case until after she made the decision to hire Pistotnik and Brad Pistotnik Law, P.A. This reinforces the idea that the advertising claims related only to Pistotnik and Brad Pistotnik Law, P.A., not Atterbury. We agree with the district court's finding that the pleadings did not sufficiently allege that Atterbury engaged in false or misleading advertising that led to B.E.'s decision to hire the law firm. Thus, the district court did not err by dismissing the KCPA claims against Atterbury.

27

The district court did not err by dismissing the KCPA claims against Atterbury. Nor did the district court err in finding collateral estoppel barred B.E.'s claims arising from how the mutual release agreement was signed. B.E. cannot recover damages against Defendants based on claims that were litigated in the prior lawsuit under any legal theory of liability. But B.E.'s legal malpractice claims alleging that Defendants failed to litigate her prior lawsuit within the applicable standard of care are separate and distinct from the dispute about how the mutual release agreement was signed. The district court prematurely dismissed these claims before completion of discovery. The district court also prematurely dismissed B.E.'s KCPA claims against Pistotnik and Brad Pistotnik Law, P.A. B.E.'s fraud and breach of fiduciary duty claims survive, but only to the extent that the claims do not arise from allegations about how the mutual release agreement was signed. On remand, the district court must set new deadlines for the parties to designate expert witnesses and to complete discovery. Both parties are free to file dispositive motions after discovery is complete.

Affirmed in part, reversed in part, and remanded with directions.